LANCASTER NATIONAL BANK *vs.* GEORGE P. TAYLOR.

If a promissory note payable to the order of a person in whose hands it is invalid is taken from him before maturity, but not indorsed by him till overdue, the indorsement does not relate back to the time of the taking, and the indorsee has no better title than the indorser himself had; although it was taken in good faith and for value.

CONTRACT on a promissory note for one thousand dollars, signed by the defendant, dated April 16, 1866, payable to Jonathan S. Butterick or order, and indorsed by him to the plaintiffs. Trial in the superior court, before *Reed*, J., who allowed the following bill of exceptions:

" It was conceded at the trial that the defendant wrote his name upon the paper produced in support of the declaration, and that the plaintiffs received the same on April 16, 1866, in payment of a previous note of like tenor signed by the defendant and indorsed by Butterick, which fell due on that day; and there was evidence that by mistake Butterick did not at the time indorse the note declared on.

" The defendant offered to show that Butterick applied to him to sign a note for one hundred dollars as an accommodation for Socrates Henry; and that for that purpose he signed a blank note which Butterick was authorized to fill up as a note for one hundred dollars only, but which he in fact by fraud and without authority filled up as a note for one thousand dollars, and indorsed and got discounted at the plaintiffs' bank for his own benefit, and which was the previous note above named.

" The defendant further offered to show that the signature to the note in suit was obtained by Butterick by a like request for his signature to a note for one hundred dollars for Henry's benefit, and that he signed his name in blank, and authorized But-

terick to fill up the instrument over his signature as a note for one hundred dollars only, but that Butterick fraudulently and without authority filled it up as a note for one thousand dollars; that the defendant never received anything on account of this or the previous note; that Butterick never indorsed the note to the plaintiffs till long after its maturity, and after they had notice of the above facts; and that at the time of the taking up of the first note Butterick was responsible and able to pay the same, and the same could have been collected of him.

" The judge ruled that, if the note was passed and sold to the plaintiffs before maturity, but by mistake was not indorsed, and the bank in consideration therefor relinquished a note for a like amount on which the defendant was legally liable as maker, and the note was afterwards, before action, indorsed by Butterick, the plaintiffs would be entitled to recover, even if the facts offered by the defendant were true; whereupon the defendant submitted to a verdict, and excepted to the foregoing ruling."

*G. F. Hoar,* for the defendant. The defendant has never contracted with the plaintiffs; and they have never stood in any relation to him but that of assignees of Butterick's right of action. Originally a promissory note was simply a written acknowledgment of debt, not assignable, and not the subject of an action. By force of the St. 3 & 4 Anne, *c.* 9, enacted to remedy these " grievances," the indorsee of a promissory note before maturity does not claim under the payee, or take his rights by assignment from him, but stands in the relation of a party directly contracting with the maker. A negotiable promissory note is, therefore, in effect, a contract with the payee, or such person as he shall appoint; and the written indorsement before maturity is simply an exercise of the power, placing the indorsee in the position, as regards the maker, of an original and independent contracting party, just as if his name had been written in the note, and not requiring him to rely, for the foundation of his claim, on any privity with, or rights under, the payee. *Oridge* v. *Sherborne,* 11 M. & W. 374. *Fisher* v. *Leland,* 4 Cush. 456. *Beauchamp* v. *Parry,* 1 B. & Ad. 89. *Barough* v. *White,* 4 B. & C. 325. And the legal character of

indorsee, and the right of suit conferred on him by statute, can be acquired only by exercise of the power of appointment by an indorsement in writing. *Estabrook* v. *Smith,* 6 Gray, 570. The position of the indorsee to whom the instrument is indorsed after maturity is different. He is not and cannot be an original party to the contract, because the period within which the contract could be in force has gone by before his rights are acquired. He is simply an assignee of the payee's right to damages for the breach ; entitled, by virtue of the statute, to sue in his own name, but entitled only to recover such damages as were legally due at the time of maturity of the contract to the person who then stood in the relation of payee. It follows, that the reason commonly given for holding that to a note indorsed before maturity defences which would avail the maker are not open against the indorsee without notice, but that such defences are open if he take the note after maturity, namely, that the fact of nonpayment is sufficient to put him upon his guard, is fortified by consideration of the nature of the contract itself, from which the same result follows. The subsequent indorsement of the note now in suit, therefore, gave the plaintiffs no rights which they did not possess at the maturity of the note, but only affected their form of remedy. By the transaction with Butterick before the indorsement, they had become the equitable assignees of a chose in action under such circumstances that they might have compelled him by bill in equity to indorse the instrument ; but until the execution of the power by him they were no more than assignees of his rights. The case stands certainly no better for them than if, the note not having been indorsed, they had instituted a suit in equity against Butterick and the defendant to compel an indorsement of the note and an enforcing of the contract.

If it be urged that by intrusting Butterick with the blank signature the defendant is estopped from denying Butterick's authority to fill up and negotiate the note in the manner he did, such an estoppel can go no further than the extent of Butterick's acts. He is estopped from denying the authority he actually gave to Butterick. But when Butterick has merely transferred his own rights to the instrument, although the transfer

was accompanied with an implied obligation to do all that he rightfully might to make the plaintiffs' legal title complete, the defendant cannot be estopped from insisting upon the legal effect of the transaction as it actually occurred. In other words, the defendant may be estopped from denying that Butterick had authority to do everything which he in fact did, which he was enabled to do by the manner in which he was intrusted with the signature; but is not estopped from denying his authority to do what he merely agreed to do, but did not in fact accomplish. And if it be argued that the absence of the indorsement is a mere omission of matter of form, making no difference to the defendant, and that it is not equitable that he should insist upon it, it may be replied that the law admits him to his defences in such case, without permitting the inquiry into the special circumstances of the transfer. A failure to indorse a note ought to put the purchaser on his guard as much as a failure to collect it at maturity; and parol evidence that such failure was by mistake is admissible no more in one case than in the other.

*G. F. Verry*, for the plaintiffs. The plaintiffs, being the equitable owners, and having obtained the legal title before suit, may maintain this action in their own name. *Ranger* v. *Cary*, 1 Met. 369. *Crocker* v. *Whitney*, 10 Mass. 316. *Mowry* v. *Todd*, 12 Mass. 281. *Chicopee Bank* v. *Chapin*, 8 Met. 40. *Gardner* v. *Gager*, 1 Allen, 502. The facts offered to be proved, if true, would not afford any defence to the note in the hands of a *bonâ fide* holder. 1 Parsons on Notes & Bills, 110, 113, 280. *Putnam* v. *Sullivan*, 4 Mass. 45. *Stoddard* v. *Kimball*, 6 Cush. 469. *Fullerton* v. *Sturges*, 4 Ohio State, 529. *Young* v. *Grote*, 4 Bing. 253, and 12 J. B. Moore, 484. *Mountague* v. *Perkins*, 22 Eng. Law & Eq. 516. *Cruchley* v. *Clarance*, 2 M. & S. 90. The transfer of the note is to be considered as made and completed so as to vest the title in the plaintiffs when they paid the consideration therefor and it was in fact delivered to them, though the indorsement of Butterick's name was not until long afterwards.

Foster, J. The rule that the indorsee of a negotiable promissory note, who has taken it before maturity for value and

without notice of any want of consideration or other **defect** rendering it void in its inception, can enforce it against the maker, notwithstanding it was valueless in the hands of the original payee, is founded upon the custom of merchants and the statute of 3 & 4 Anne, *c.* 9. It is an exception to the general rule of the common law; according to which a written promise can be enforced only in the name of the party to whom it is made, and, if it has been assigned, although the assignee is allowed to bring an action upon it in the name of his assignor yet he has no greater rights than the assignor possessed, and the instrument remains subject to every defence that would have existed if no assignment had taken place. The ordinary rule applies to all notes which are not negotiable, and to all negotiable notes which are not duly indorsed for value before maturity. A note not negotiable may be assigned and transferred like any other chose in action, but can be sued only in the name of the payee, and is liable to every defence existing against him. A negotiable note not transferred until it is overdue may be sued in the name of the indorsee, but as to defences must be treated precisely like one not negotiable. And a negotiable note which is transferred before maturity, but not indorsed until afterwards, in our opinion can stand on no better footing. Whoever receives it takes a contract which upon its face shows that it is subject to every defence that could have been made between the original parties. There is no custom of merchants in favor of such an assignee, and no rule of law by which he is entitled to greater rights than the payee. If the contract was originally invalid for want of consideration or other cause, so will it be in any other hands into which it passes before the legal title is transferred by regular indorsement. No such indorsement having been made before the note is overdue and dishonored, any subsequent one takes effect only from its date. There is no doctrine known to the mercantile law, by which it can relate back to the time of the equitable transfer, and place the assignee in the same position as if he had been before maturity the holder of the note for value.

It is true a distinction between negotiable and unnegotiable

notes has been recognized in regard to the set-off allowed by statute, and, where a negotiable note was transferred for value before it was dishonored, but not indorsed till afterwards, a previously existing set-off of a distinct demand against the payee was not allowed to prevail. *Ranger* v. *Cary*, 1 Met. 369. The set-off of distinct demands is a matter regulated by statute, and not a common law defence. And the court carefully limit the application of their opinion, saying that " here is no question of want or failure of consideration of this note; no offer to prove payment of it; but the defendants rely on an account filed in offset." This case is therefore no authority against the conclusion to which we are conducted by applying the elemen tary principles of the law merchant.

The facts in the present action show that the defendant intrusted to Butterick his signature to a blank note, with authority to write over it a note of one hundred dollars for the benefit of one Henry ; that Butterick fraudulently filled up the note now in suit so as to make it one for the sum of a thousand dollars payable to his own order, and passed it to the Lancaster Bank in payment of a former note, that is, for a valuable consideration. But Butterick did not then indorse the note; and it remained in the hands of the bank unindorsed till after its maturity. At a later date, when the note was overdue and the bank had notice of all these facts, Butterick did indorse it. Undeniably, if he had done so originally, the defendant would have been liable. Having placed it in the power of Butterick to perpetrate such a fraud, the injury caused by the defendant's own negligence must have been borne by himself, and not by the bank, which was in no fault and guilty of no want of due care. But the defendant is liable only upon and to the extent of the contract which was written, and not for one which might have been but was not made. The bank saw fit to take the note, which purported to be in favor of Butterick, without requiring him to indorse it. They therefore took it subject to any defence which might be made to an action in Butterick's name. And the subsequent indorsement does not improve their position. When the note came into the hands of the bank payable to the

order of Butterick and not indorsed by him, the very form of the instrument gave notice that no one could bring an action upon it except in the name of Butterick, and that it was subject to every defence affecting its original validity which could have been made to it while it continued in his hands.

There is a recent English case in which this identical question has been determined by eminent judges, of great experience and authority in mercantile law. A check or sight draft, obtained by fraud from the defendant by one Griffiths, was transferred for a valuable consideration to the plaintiff, before dishonor and with no notice to him of the fraud. But the actual indorsement of the paper was not made till the instrument was dishonored and the plaintiff had notice of its fraudulent origin. On this state of facts, Erle, C. J., said: "The intention, no doubt, was, that the plaintiff should take the instrument as indorsee; but the indorsement was omitted, and whilst it was in the hands of the plaintiff without being indorsed it was as if it had been an ordinary chattel that had passed by an equitable and not by a legal assignment. All the rights, therefore, that the plaintiff had at that time at law were such as Griffiths had, and no more. Then Griffiths, having defrauded the defendant of the bill, could have no right to it as against the defendant. The law relating to negotiable instruments is, that the fact of delivery gives to the person who takes the instrument a title which is good as against all the world, notwithstanding there may be some defect in the title of him from whom the bill is taken, provided it is taken by indorsement for value and without notice of the fraud which constitutes the defect in title. Now the title which the plaintiff gained on the delivery of this instrument was not like that which he would have obtained on the delivery of a negotiable instrument not requiring indorsement; it was yet incomplete, but capable of being perfected by indorsement. Before he had obtained the indorsement he was not within the rule of law I have mentioned; and when he did obtain it he had notice that he could not gain any title to the bill on account of the fraud practised on the drawer." In the same case, Willes, J., said: "The general rule of law is, *Nemo*

*dat, qui non habet;* but in the case of negotiable instruments, in order that they may circulate freely, and that persons may not on every occasion be put to the trouble of inquiring into their origin and the transactions between the original parties to the bill, there is an exception to the above rule, and a person taking a bill during its currency, for value, and without notice of any fraud perpetrated by him from whom he takes it, is entitled to sue any person whose name is on the bill, notwithstanding that the person against whom he brings his action was originally defrauded of that bill. It is necessary, however, that the bill should have been indorsed to the holder and taken by him during its currency, and not after it became due; for a person who takes a bill in any manner after it has become due takes it subject to all the equities between the antecedent parties. The person who claims the benefit of this law relating to bills of exchange must prove that he is entitled to do so; he must show that he took the bill by indorsement for value and without notice of fraud. This is a doctrine of the law merchant in favor of those who have acquired by their diligence a complete title. The plaintiff has failed to show that he has done so, and cannot now recover upon it." *Whistler* v. *Forster,* 14 C. B. (N. S.) 248.

In the opinion of a majority of the court, these citations express with fulness and accuracy the rule, and the limitations of the rule, of the law merchant, which gives to the *bonâ fide* indorsee for value before maturity of a negotiable instrument a better title and a more complete right of action than the original payee of the instrument may have possessed. The learned judge at the trial having proceeded upon a different view of the law, the            *Exceptions are sustained.*