[No. 3333.   Decided March 3, 1900.]

# N. S. HUNTINGTON, *Respondent,* v. HENRY H. LOMBARD, *Appellant.*

ACTION ON NOTE—WANT OF CONSIDERATION—BREACH OF WARRANTY AS
. A DEFENSE.

In an action to recover upon a promissory note given for the
purchase price of goods, the maker may plead as a defense a want
of consideration, partial or complete, where there has been a
breach of warranty concerning tne goods.

NEGOTIABLE INSTRUMENTS—TRANSFER BY SEPARATE ASSIGNMENT—
EFFECT OF SUBSEQUENT INDORSEMENT.

Where a promissory note is transferred by a separate assign-
ment, and is not indorsed to the assignee until after maturity,
the subsequent indorsement will not relate back so as to cut off
defenses the maker may have had against the payee.

SALES—BREACH OF WARRANTY.

Where the seller of a pump and irrigating plant knew the use
for which they were intended, selected the land to be irrigated
and the pump for the purpose, and expressly represented that the
pump would accomplish the work, the representations of the
sellers amount to a warranty of the machinery, whether so in-
tended by them or not, if the purchaser relied on such state-
ments as a warranty and was induced thereby to make the pur-
chase.

SAME—FRAUDULENT REPRESENTATIONS—RELIANCE ON—SUFFICIENCY
OF EVIDENCE.

In an action upon a note given for the purchase price of a
pump and plant bought for irrigating purposes, the fact that the
note was given by the maker after observing the operation of the
pump for a few hours, that he had subsequently made a couple of
interest payments on the note, and· that he had not raised objec-
tion to the failure of the pumping plant until suit for the pur-
chase price, does not negative his defense that ne had purchased
in reliance upon the representations of the seller, when it appears
that at the time of the test of the machinery he was dissatisfied
with its adequacy and the expensiveness of its operation, and
that the seller's engineer in charge claimed it would work all
right at the higher stages of the river in spring and summer
when irrigation was necessary, and that it would take much less

fuel after the pump had been worked a while; that the seller
had selected the body of land to be irrigated and represented that
the pump would produce a flow of 700 gallons per minute to the
highest point of the land and would successfully irrigate 297
acres, when in fact it could not raise water to the higher parts of
the land and could not pump more than 200 gallons per minute;
and that a number of the pumps had been put in in the same
county by the sellers and none of them could irrigate the lands
successfully. (Dunbar, J., dissents.)

ACTION ON NOTE—BREACH OF WARRANTY AS DEFENSE—ESTOPPEL —
    PAYMENT OF INTEREST COUPONS.

The maker of a note given for the purchase price of machin-
ery may set up a breach of warranty thereof as a defense; and
the payment of interest coupons on such note would not estop
him from denying the consideration for the note.

Appeal from Superior Court, Yakima County.—Hon.
JOHN B. DAVIDSON, Judge.   Reversed.

*Bogle & Rigg,* for appellant.

*Whitson & Parker,* for respondent.

The opinion of the court was delivered by

REAVIS, J.—During the summer of 1892, and for some
time prior thereto, Crippen, Lawrence & Co. were engaged
in the business of making farm loans and selling irrigation
pumps.   G. M. McKinney was their general agent in
charge of their business in the state, at North Yakima.
McKinney, as such agent, proposed to appellant, Lom-
bard, that if he would make application under the desert
land law of the United States and enter the land desig-
nated by McKinney, adjacent to the Columbia river, Crip-
pen, Lawrence & Co. would pay all expenses incident
thereto, and would erect thereon an irrigation pump,
known as the Nye steam vacuum pump, of a capacity to
furnish 700 gallons of water per minute on the highest
point of the land, and Crippen, Lawrence & Co. would
take appellant's note for the entire cost, including the

price at which Crippen, Lawrence & Co. sold the pump, payable in five years, and would take a mortgage on the land so entered to secure the note.   McKinney represented to appellant that the pump would furnish sufficient water on the highest point of the land to irrigate the entire tract for agricultural purposes; that it would be economical in operation, and could be operated with driftwood from the Columbia river; that the pump was especially constructed for irrigation work, and was strong and durable; and that any ordinary farm hand could operate it.   The statement by McKinney was that the pump he proposed to erect on the land would furnish enough water to irrigate 297 acres of land and make it valuable for farming purposes.   McKinney showed appellant a tract of land some fifty miles from North Yakima, where appellant lived, and, upon his recommendation, appellant selected the land and made application therefor.   Crippen, Lawrence & Co. paid all expenses and fees for clearing the land and constructing ditches on each forty acres thereof, which was done under their supervision, and put one of their pumping plants thereon.   After the pump was erected, appellant, McKinney, and Mr. Putnam, who was a member of the firm of Crippen, Lawrence & Co., went to inspect its operation. It was operated by an engineer in the employ of the company.   These persons spent about half a day there, and the pump seemed to appellant to be, in its operation, extravagant in its consumption of fuel, and the water furnished was variously estimated at from 200 to 400 gallons per minute.   Appellant at this time assisted in firing the engine and procuring fuel for it, and was apparently not satisfied with its operation; but it was explained to him by McKinney that the water in the river was low, being in the fall, and the pump would do the work claimed for it when the river was high, during the irrigating season in the spring and summer.   Crippen, Lawrence & Co. pre-

sented their statement of the amount expended, including
the price of the pump, and appellant executed his note in
the sum of $2,700 therefor, and executed a mortgage on
the land to secure it, and also at the same time, as addi-
tional security, executed a chattel mortgage upon the
pumping plant. The proof of the reclamation of the
tract of land had been made by appellant, the plat of the
tract and the evidence of the reclamation being prepared
by McKinney. The note and mortgage were executed
November 23, 1892, by the appellant. About January
2, 1893, Crippen, Lawrence & Co. sold the note and real
mortgage to the plaintiff, Huntington, for value. The
note was not indorsed by the payee at the time of the sale,
and was delivered with a written assignment of the mort-
gage. On March 23, 1898, after this suit was brought
and after the answer of the appellant had been served, an
indorsement of the note was made to Huntington by a
member of the firm of Crippen, Lawrence & Co. The
consideration of the note was the money expended by Crip-
pen, Lawrence & Co. in procuring the land, and the price
of the pump. The land was desert, and was valueless
without irrigation, and there was no known method to
irrigate it in any other way than by the pump. Appellant
paid the semi-annual interest coupon due May 23, 1893,
of $81, and the same amount due November 17, 1893.
The present action is for judgment upon the note and fore-
closure of the mortgage upon the land. The appellant,
for affirmative defense, set up substantially the facts above
stated and that the firm of Crippen, Lawrence & Co. agreed
to procure the tract of land, set up a pumping plant com-
plete, under the supervision of their own engineer, so as to
insure its proper location and construction for the work;
that they recommended the land adjacent to the Columbia
river, which was about one hundred and twenty-five feet
above its ordinary level; that said company not only owned

a large number of said pumps, but was also engaged in the business of loaning money, and, as an inducement to appellant to purchase one of their pumps and procure title to the land, they represented that their pumping plant was especially adapted and fitted for pumping water such as flowed in the Columbia river; that the plant would raise water from the Columbia river at the rate of 700 gallons per minute, at the highest point on the land; that they also represented to appellant that the pumping plant was economical in operation, and strong and durable, and would furnish a practical, successful, and economical means of irrigating the entire tract of land for agricultural purposes; and that the pumping plant was especially fitted, suited, and adapted to that purpose.    It was further stated that the pumping plant was in fact too expensive to operate, and was poorly constructed, and wholly failed to furnish a practical and economical means of irrigating the land; that the plant did not have a capacity of 700 gallons per minute, but a capacity, at most, not exceeding 200 gallons per minute, and would not pump water in any quantity to the highest point of the land, nor to any point high enough to permit the use of the water for irrigating any considerable quantity of the land, not exceeding ten acres; that the valves and working parts of the pump were improperly constructed for pumping water from the Columbia river; that it could be operated for only short periods of time, and then it would become necessary to make expensive repairs; that the pumping plant was totally unfit and unsuitable for the purpose of irrigating said land; that appellant relied on the representations of Crippen, Lawrence & Co. above set out, and would not have applied for the desert lands, nor executed the note and mortgages, if such representations had not been made to him; that such false representations were made by Crippen, Lawrence & Co. with the express intent of inducing

appellant to enter into the contract and to execute the note and mortgages; and that the said company well knew defendant relied on such representations.    Respondent replied, denying these matters.

1.    The superior court found that the appellant paid two interest coupons with full knowledge of the facts, and up to the time of the institution of this suit had never complained to the holder of the note and mortgages of the matters set up in the answer, and remained during all the time silent concerning the same, and concluded, "Whereby defendant is guilty of laches and is estopped to set up the defenses set out in his answer."    And the court further found that the appellant had full opportunity to ascertain for himself the capacity and adaptability of the pump and plant, and had equal opportunity for determining such matters with the parties with whom he was dealing.    The court appears not to have found whether the representations of Crippen, Lawrence & Co. were made, or whether appellant relied upon them, or whether in fact the pumping plant was absolutely inadequate to irrigate the land recommended by McKinney to appellant.    Counsel for respondent have maintained here that the answer sets up facts upon which the appellant claims a rescission of the contract upon which the note is based; and some color to this contention may be found in the offer made by the appellant to convey the land mortgaged and the other property to plaintiff, but the facts stated affirmatively by appellant go to establish a warranty of the pumping plant sold to appellant and the claim of breach thereof.    Such a warranty and a breach thereof may properly be pleaded as defense to an action upon the purchase price for property sold.    It is true, the answer does not name these facts a defense against the consideration stated in the note; but no objection was taken to the form and the evident effect imputed to them by counsel for appellant, and the case

was tried upon the issues presented in the affirmative defense. While there has been some apparent conflict in the authorities upon the right to plead a want of consideration partially or completely to an action upon a promissory note for the purchase price of property, where there has been a breach of warranty, to the damage of the maker, the weight of current authority permits such defense. The authorities are, many of them, collected in Benjamin on Sales (1888 ed.), p. 867, where it is stated:

" The prevailing rule in America is that, in order to prevent circuity of action, a buyer, when sued for the price, may rely upon a breach of warranty as a defense *pro tanto,* and so reduce the amount of the plaintiff's recovery; or, if the article was entirely worthless, defeat the whole claim." *Harrington v. Stratton,* 22 Pick. 510; *Judd v. Dennison,* 10 Wend. 513; *Cragin v. Fowler,* 34 Vt. 326 (80 Am. Dec. 680).

2. The note in suit was transferred by Crippen, Lawrence & Co. to plaintiff by separate assignment, and not by indorsement. Thus, the plaintiff stands in the same position as his assignors, and can only assert such rights as they would have if here. *Central Trust Co. v. National Bank,* 101 U. S. 68; *Hale v. Hitchcock,* 3 Kan. App. 23 (44 Pac. 446); 2 Randolph, Commercial Paper, §§ 788, 789; 3 Randolph, Commercial Paper, §§ 1655, 1877; 1 Daniel, Negotiable Instruments, §§ 664, 741. The subsequent indorsement after maturity will not relate back to cut off defenses. *Lancaster National Bank v. Taylor,* 100 Mass. 18 (1 Am. Rep. 71); *Haskell v. Mitchell,* 53 Me. 468 (89 Am. Dec. 711).

3. Were the representations made to the appellant to induce the sale of the pump and plant fraudulent, or were they, in law, warranties of its fitness and adaptability to the land and the purposes for which it was sold? It may be observed here that the testimony clearly discloses that

the representations stated in the defense were actually made. The general agent for Crippen, Lawrence & Co. made two depositions. His first deposition fully sustains the allegations of the defense, and was to the same effect as the testimony of the appellant. It is true, the general agent made a second deposition, in which there was some equivocation and an attempt to soften and explain his testimony first given, but the incidents and circumstances surrounding the transaction and the corroborative statements of other witnesses satisfactorily establish the version of his declarations first made. It is further disclosed by the testimony that the firm of Crippen, Lawrence & Co., as well as their general agent, had been for some time dealing in pumps, all of the same kind as the one sold to appellant; that one of the firm was a member of the manufacturing company that made these pumps; that they had put them on the market in Wyoming, Colorado, and California, for irrigating arid lands; that the appellant had been informed by them that these pumps had been successfully used in irrigation; that the general agent was perfectly familiar with the conditions existing at the Columbia river, where appellant's land was selected; that the tract of land selected was over fifty miles from where the appellant lived. And we have no difficulty, from an inspection of the testimony, in arriving at the conclusion that the general agent virtually discovered and invented the scheme of irrigating this particular tract of land. The appellant had resided about two years at North Yakima, and was practically unacquainted with irrigation; he was a furniture dealer, and unfamiliar with pumps and engines, and knew nothing about the feasibility of their successful working under the conditions and at the place proposed. Did he rely upon the statements and representations made to him by Crippen, Lawrence & Co. and their agent? It

seems scarcely susceptible of doubt that he did, and that they were the material inducements to his making the purchase. The sellers of the pump and plant knew the use for which it was intended, and selected the land and the pump, and expressly represented that the pump would accomplish the work, and warranted the machinery for the purpose; and it would be immaterial whether the representations by the sellers were intended to be a warranty, if the appellant relied on them. *Reed v. Hastings,* 61 Ill. 266; *Hawkins v. Pemberton,* 51 N. Y. 198 (10 Am. Rep. 595); *Kenner v. Harding,* 85 Ill. 264 (28 Am. Rep. 615); *Stroud v. Pierce,* 6 Allen, 413.

In *Whitehead & Atherton Machine Co. v. Ryder,* 139 Mass. 366 (31 N. E. 736), the purchaser ordered a certain machine by letter, stating that it must do certain specified work, and the seller answered, accepting the order, saying, "You may rely upon having a first-rate machine, which will do your work in a satisfactory manner." The machine, although a good one for some purposes, failed to perform the work for which it was intended and the seller was held to have warranted it. In *Aultman v. Weber,* 28 Ill. App. 91, a statement that the machine "will do as good work as any other machine in the market" was held to be a warranty. The machine was a binder.

4. It is maintained, however, by the learned counsel for the respondent that appellant had full opportunity for an examination of the pump and plant, and that he saw it in operation, before he executed the note and mortgages. Evidence of such examination was pertinent to negative the allegation that appellant relied upon representations made to him. Pollock on Torts (Webb's Am. ed.), p. 377, observes:

" Yet another case is that the plaintiff has at hand the means of testing the defendant's statement, indicated by the defendant himself, or otherwise within the plaintiff's

power, and either does not use them or uses them in a partial and imperfect manner.    Here it seems plausible at first sight to contend that a man who does not use obvious means of verifying the representations made to him does not deserve to be compensated for any loss he may incur by relying on them without inquiry.    But the ground of this kind of redress is not the merit of the plaintiff, but the demerit of the defendant: and it is now settled law that one who chooses to make positive assertions without warrant shall not excuse himself by saying that the other party need not have relied upon them.    He must show that his representation was not in fact relied upon."

. 1 Bigelow on Fraud, p. 524, observes:

" If the representation were of a character to induce action, and did induce it, that is enough.    It matters not, it has well been declared, that a person misled may be said, in some loose sense, to have been negligent (in reality negligence is beside the case where the misrepresentation was calculated to mislead, and did mislead) ; for it is not just that a man who has deceived another should be permitted to say to him, ' You ought not to have believed or trusted me,' or, ' You were yourself guilty of negligence.'    This indeed appears to be true even of cases in which the injured party had in fact made a partial examination."

See, also, the cases, *Rathbone v. Frost,* 9 Wash. 162 (37 Pac. 298) ; *State v. Knowlton,* 11 Wash. 512 (39 Pac. 966).    In the latter case, where a party had made some examination, it was said:

" We think it is quite well settled that the false representations need not be the only moving cause which induces another to part with his property."

Perhaps no clearer statement of the rule has been made than that by the supreme court of Massachusetts in *Holst v. Stewart,* 161 Mass. 516 (37 N. E. 755, 42 Am. St. Rep. 442), which is as follows:

" But in the application of this rule, the circumstances of each case should be considered to determine whether the

plaintiff has been guilty of such inexcusable negligence as should preclude him, under a general rule of public policy, from having a remedy against one who has fraudulently abused his confidence."

In *Tacoma v. Tacoma Light & Water Co.*, 17 Wash. 458 (50 Pac. 55), it was said:

" Where the purchaser may know the truth by looking, or where the truth is shown him, he is not misled, but where he relies upon the statements of the vendor, and has no knowledge that such statements are false, he can, when they are false, and he has been reasonably prudent, recover damages. If no knowledge of their falsity is presented to him, the purchaser may rely implicitly upon the statements of the vendor, if such statements are not so openly and palpably false that their untruth is apparent to an ordinarily prudent person."

Whether the representation is merely an expression of opinion or belief, or affirmation of facts, is frequently a question of fact, arising upon the circumstances surrounding the transaction.

It appears that the only examination which the appellant had an opportunity to make of the pump and plant upon the land was a few hours' operation of the pump by the engineer in the employ of the sellers; that there were present with him the general agent who negotiated the sale, and who pointed out and explained to him its operation, and also another member of the firm, Mr. Putnam; that when there was an apparent deficiency in its capacity to raise water, and complaint was made of the extravagant use of fuel, an explanation was readily at hand,—that a change in the stage of the water and the longer working of the pump would obviate all difficulty, and that it would successfully irrigate 297 acres of land.

The note and mortgages were executed immediately after the pump was put into operation. Appellant, McKinney, and Putnam returned at once to North Yakima,

and there proof was made of the reclamation of the desert land. It is very apparent from the whole record that appellant at this time believed that the pump and plant would successfully irrigate the land, and it is further apparent that it was not until a considerable time elapsed that he was undeceived. The pump was put in operation November, 1892, and there was no reason for its use for irrigation until the spring and summer following; but by that time it was absolutely demonstrated, by the use of a number of pumps of the same character in the vicinity, that they could not irrigate these lands successfully. This is a potent fact, appearing without contradiction, as a number of other successful farmers of irrigated lands to whom these pumps were sold stated that they were an absolute failure for the purpose for which they were sold. It appears from the testimony of the general agent, McKinney, that he sold a large number of these pumps in Yakima county, and in no single instance had one of them proven a success. And the evidence of Mr. Putnam, a member of the firm, was to the same effect, and also that they were a failure elsewhere in irrigation. When appellant thus found that the whole scheme contemplated as a consideration for his note, the land and the pump and plant, were of no value, he took no further action relative to the irrigation of the land, nor did he advise Crippen, Lawrence & Co., the sellers, of any claim against them for damages. But he has offered as a defense to the claim of plaintiff such breach of warranty of sale as enables him to deny the consideration of the note in suit, and it would seem that he may do so at any time before the payment of the note is made. The payment of the interest coupons does not estop him. *Davis v. Brown,* 94 U. S. 423; 3 Randolph, Commercial Paper, § 1872; *Danforth v. Crookshanks,* 68 Mo. App. 311.

It is very apparent from the record that all parties, sellers as well as buyer, knew that the pumping plant could not irrigate this land in the ordinary way of farming, or for any useful purpose. It also further appears clearly that appellant received no consideration for his note. But it further appears that the expenses incidental to purchasing the land were advanced by plaintiff's assignors.

The cause is therefore reversed, with direction to the superior court to enter a decree of foreclosure against the property described in the mortgage, but that no deficiency judgment be entered against appellant.

GORDON, C. J. and FULLERTON, J., concur.

DUNBAR, J. (dissenting)—I dissent. I think, under the decisions of this court in *Baker v. Bicknell*, 14 Wash. 29 (44 Pac. 107); *Sackman v. Campbell*, 15 Wash. 58 (45 Pac. 895); *West Seattle Land & Imp. Co. v Herren*, 16 Wash. 665 (48 Pac. 341); and *Washington Central Imp. Co. v. Newlands*, 11 Wash. 212 (39 Pac. 366), this judgment ought to be affirmed. Where a man personally makes a practical test of machinery before he buys, then enters into a contract of purchase, makes payments on that contract at intervals for three years, and raises no objection for two years more, nor at all, until he is sued on his contract, after five years from the time of its execution, he ought, in the interest of stability of contracts and good, sound business principles generally, to be estopped from raising the questions raised here.