(April 21, 1910.)

# R. I. BARNETT, Appellant, v. CHRIS HAGAN and GEORGE H. CUSHING, Copartners Doing Business as HAGAN & CUSHING, Respondents.

[108 Pac. 743.]

BREACH OF WARRANTY—PAROL EVIDENCE—EXPLANATION OF TECHNICAL TERM—COMPARISON OF MANUFACTURED ARTICLES—EVIDENCE—ADMISSIBILITY.

(Syllabus by the court.)

1. Where a contract is made for the sale of a safe described in the contract as a "No. 8 F. & B. Victor Safe," in an action founded upon such contract for the recovery of the purchase price, where a defense is made upon the ground of breach of warranty, parol evidence may be received showing the statements and representations of the seller to the purchaser at the time and prior to the execution of said contract, as to what a No. 8 F. & B. Victor safe, as designated in said contract, meant and its character and description.

2. Where a safe is purchased, and an implied warranty arises out of the transaction to the effect that such safe is fireproof, and is a new safe, and in good condition, in an action based upon the contract of purchase, where breach of warranty is plead as a defense, it is error to admit evidence tending to show that the safe was not made in the same way or upon the same plan or theory as other standard fireproof safes.

3. In determining whether a safe warranted to be fireproof is in fact fireproof, evidence may be received showing that safes made by the same company, of like kind and material and method of construction, had passed through fires and withstood the effects of heat without any material injury to the contents of such safes; but comparison cannot be made with safes made by other manufacturers of different kind and materials and constructed upon different plans and theories.

4. Where breach of warranty is plead as a defense, evidence should not be admitted which goes outside and beyond the terms of the warranty and which tends to show that the article warranted does not possess certain other characteristics or qualities which were not covered by the warranty.

APPEAL from the District Court of the Second Judicial District, for Latah County. Hon. Edgar C. Steele, Judge.

An action to recover the contract price of a safe. Judgment for the defendants. Plaintiff appeals. *Reversed.*

C. J. Orland, for Appellant.

All conversations of negotiation had prior to the execution of a written contract are inadmissible in evidence. (*Jacobs v. Shenon,* 3 Ida. 281, 29 Pac. 44; *First National Bank. v. Bews,* 5 Ida. 678, 51 Pac. 777.)

The evidence of what other Victor safes have done in protecting their contents from fire should have been admitted. It was the best evidence which could be provided. (1 Wigmore on Evidence, sec. 442.)

The court erred in permitting the witness Chick for the defendants to compare the safe in controversy .with the safe of other manufacturers, and erred in refusing to allow the plaintiff to compare the safe in controversy with other safes of the same company, as to their fire-protecting qualities. (*Davis v. Sweeney,* 80 Iowa, 391, 45 N. W. 1040; *Kramer v. Messner,* 101 Iowa, 88, 69 N. W. 1143; *Nat. Bank & Loan Co. v. Dunn,* 106 Ind. 110, 6 N. E. 131; *Vietti v. Nesbitt,* 22 Nev. 390, 41 Pac. 152, 18 Morr. Min. Rep. 247; *Chicago St. L. & P. R. Co. v. Champion* (Ind.), 32 N. E. 874; *Leonard v. Southern Pac. Co.,* 21 Or. 555, 28 Pac. 887, 15 L. R. A. 221; *Shea v. Glendale E. F. Co.,* 162 Mass. 463, 38 N. E. 1123; *Bemis v. Temple,* 162 Mass. 342, 38 N. E. 970, 26 L. R. A. 254; *Reeve v. Dennett,* 145 Mass. 23, 11 N. E. 938; *Commonwealth v. Leach,* 156 Mass. 99, 30 N. E. 163; *Grand Trunk R. Co. v. Richardson,* 91 U. S. 454, 32 L. ed. 356; 1 Wigmore on Evidence, sec. 451.)

No warranty can be implied, where the manufacturer or dealer sells a specific article even although such manufacturer or dealer knows the purpose for which the article is to be used, yet no implied warranty arises that the article will be sufficient for the purpose. (*Morris v. Bradley Fertilizer Co.,* 64 Fed. 55, 12 C. C. A. 34; *McCray & C. S. Co. v. Woods,* 99 Mich. 269, 41 Am. St. 599, 58 N. W. 320; *Cosgrove v. Bennett,* 32 Minn. 371, 20 N. W. 359; *Goulds v. Brophy,* 42 Minn. 109, 43 N. W. 834, 6 L. R. A. 392; *Wisconsin Red Pressed.*

*Brick Co. v. Hood,* 54 Minn. 543, 56 N. W. 166; *Wheaton Roller M. Co. v. Noye Mfg. Co.,* 66 Minn. 156, 68 N. W. 854; *Milwaukee Boiler Co. v. Duncan,* 87 Wis. 120, 41 Am. St. 33, 58 N. W. 233; *J. I. Case Plow Works v. Niles & Scott Co.,* 90 Wis. 590, 63 N. W. 1013; *DeWitt v. Berry,* 134 U. S. 306, 10 Sup. Ct. 536, 33 L. ed. 896; *Davis Calyx Drill Co. v. Mallory,* 137 Fed. 332, 69 C. C. A. 662, 69 L. R. A. 973.)

George G. Pickett, for Respondents.

"The representations of a seller familiar with machinery or other articles amount to a warranty, whether so intended by him or not, where the buyer is not familiar with machinery and such articles, and relying on the statements as a warranty, is thereby induced to purchase." (*North Western Lumber Co. v. Calender,* 36 Wash. 492, 70 Pac. 30; *Huntington v. Lombard,* 22 Wash. 202, 60 Pac. 414; *Elliott v. Puget Sound etc.,* 22 Wash. 220, 60 Pac. 410; *Lander v. Sheehan,* 32 Mont. 25, 79 Pac. 408.)

"Where goods are sold by description for a particular purpose known to the seller, there is an implied warranty that they are as represented and suitable for the intended purpose." (*Lenz v. Blake-McFall Co.,* 44 Or. 569, 76 Pac. 356; *Nixa Canning Co. v. Lehmann-Higginson Grocery Co.,* 70 Kan. 664, 79 Pac. 141, 70 L. R. A. 653; *Lane v. Pacific & I. N. Ry. Co.,* 8 Ida. 230, 67 Pac. 656; *Morse v. Union Stockyard Co.,* 21 Or. 289, 28 Pac. 2, 14 L. R. A. 157; *Hunter v. Porter,* 10 Ida. 86, 77 Pac. 434.)

"In an action for breach of contract of a sale of machinery or other articles, evidence that other machinery or articles, made on the same pattern and of like materials, did good work, is inadmissible." (*Lander v. Sheehan,* 32 Mont. 25, 79 Pac. 408; *Fox v. Stockton etc. Harvester Works,* 83 Cal. 333, 23 Pac. 295; *Stockton etc. Works v. Am. Fire Ins. Co.,* 121 Cal. 182, 53 Pac. 573.)

If any error was committed it was in the court not allowing the respondent to state what representations were made by the plaintiff at the time of and just prior to the signing of the contract for the sale of the safe to the defendants as to what the safe was to be and what it would do, also as to what

its protective qualities were, as well as what they were to get. (*Davis v. Sweeney,* 80 Iowa, 391, 45 N. W. 1040; *Kramer v. Messner,* 101 Iowa, 88, 69 N. W. 1143.)

STEWART, J.—This is an action to recover the contract price of a Victor safe sold by the Victor Safe & Lock Company to the defendants upon a written contract assigned to this plaintiff. The order for the safe was as follows:

.''THE VICTOR SAFE AND LOCK CO.,

Cincinnati, Ohio,

Moscow, Idaho, January 19, 1907.

Ship to Cold Storage Market, Town Moscow, County Latah, State Idaho, our No. 8 F. & B. Victor safe, for which I agree to pay to your order the sum of Three Hundred Dollars ($300.00) as follows: One Hundred and Twenty ($120.00) net cash on arrival and $25.00 each 30 days until fully paid less $60.00 for 2nd hand safe in exchange in our office, balance due, $240.00, to be delivered on board cars at Cincinnati.

Paint on safe the following name: Cold Storage Market.

It is agreed no money shall be paid for, or on account of this order except as above stated, and· that the title to said property shall not pass until it is paid for in full, but shall remain the property of The Victor Safe & Lock Co. until such payment is made, and in default thereof said Company, its agent or attorney, may take possession and remove said property without legal process and for which purpose may enter in or upon the premises without prejudice.

It is also agreed that nothing but shipment shall constitute an acceptance of this order, and that this paper contains all the agreement and understanding between the parties hereto and that upon default in any of the payments herein stipulated for, all of the remaining payments shall thereupon become immediately due and payable.

HAGAN & CUSHING,

By G. H. CUSHING.

Spokane Safe & Lock Co.,

No. 3 Bernard St.,

Spokane, Wash.     By Barnett.''

The defendants interposed two defenses: First, that at the time the order for the safe sued upon was given, the Victor Safe & Lock Co. was a foreign corporation doing business within the state, and had failed and refused and neglected to comply with the constitution and laws of this state regulating and governing foreign corporations; second, breach of warranty; that the safe received was not the safe ordered; that the safe received was defective and was not a No. 8 F. & B. Victor safe under the general terms in the guaranty of said number, and the safe to be supplied thereunder; that upon the arrival of said safe and before the defendants were allowed to inspect the same they were compelled to pay $68.44 freight, express and moving charges; that they notified plaintiff of the condition the safe was in, and that they would not accept the same, and that it was subject to the order of the defendants and that defendants have been damaged in the sum of forty-five dollars in caring for said safe subject to the plaintiff's order.

Upon the issues thus joined a trial was had to a jury and a verdict rendered for the defendants in the sum of sixty-eight dollars. A motion for a new trial was made and overruled. This appeal is from the judgment and the order overruling the motion for a new trial.

The first defense, that the Victor Safe & Lock Co. was a foreign corporation doing business within the state and had failed and refused to comply with the constitution and laws of the state, seems to have been abandoned by the defendants. There is no evidence in the record or any question argued upon this appeal involving the issue presented by this part of the answer. The entire defense made and the questions raised upon this appeal grow out of the defense of breach of warranty.

When the safe arrived two of the wheels or castors were broken and the defendants notified the plaintiff, as the agent of the Victor Safe & Lock Co., of such fact and the company advised the defendants to accept such safe and file a claim for damages against the railroad company for the damages, and that the safe company would assist the defendants in col-

lecting the same, and that the fireproof qualities of the safe
were in no way impaired by such damage. This defendants
refused to do. After these wheels had been received they
were placed on the safe and it was removed into the defend-
ants' place of business for inspection, when an examination
of the same was made, and the defendant Hagan testified as
to its condition as follows:

"In taking hold of the door of the safe, it being locked, I
shook it and it shook like a barn door, and I went to work
and took the combination and opened it, and examined, and
found that the door in being made has five offsets or what you
would call steps, and that the door fits against similar offsets
in the frame, and on the inner offset, the offset No. 1, as I
would call it, I could place eight pennies. . . . . I could place
these on the inner offset and shut the door and turn the com-
bination; on offset No. 2 I can place four pennies on and shut
the door; on offset No. 3 at one place I could place five pen-
nies, in one place a little farther back, only three. In offset
No. 4 I can place at one place five pennies and shut the door,
and in another place on the same offset I can put four pennies,
and close the door; offset No. 5, or the outer one, I can put
at one place five pennies, and at another six pennies and shut
the door.

"I find that the safe is bulged, what I would call warped
on top, and on the right-hand side, I should judge the safe
is bulged or warped to the extent of perhaps five-eighths of
an inch, and on the left-hand side it is warped to the extent
of about 3/16. . . . . Around the inside, in the main frames,
the packing or filling has penetrated, and it has penetrated
more especially from the top coming down, and there is some
on the left-hand side, not as much as on the right-hand side
and at the top, but it is coming down through. It shows that
the filling was green. The mold on the casing itself is a kind
of a gray; the filling that comes through has an iron color,
I should say it was, or rather dark. . . . . I find this coming
through the walls of the safe, the opening between the last
step or offset and the inner door, offset No. 5.

"The outside door is very loose. I can place on the side of the door that has the lock on fourteen thicknesses of butcher's paper, butcher manila, between the door and the flanges, shut the door, turn the combination and pull it out. I did the same thing on the top. At the bottom of the door I placed ten thicknesses of this butcher paper, shut the door, and the combination and pulled it out. On the back side, the side the hinges are on, I placed three thicknesses, and shut the door and pulled it out. . . . . The filling in that door is cracked; I think it has three cracks leading from the combination up."

The defendants wrote the plaintiff about the condition of this safe and the plaintiff advised them as follows:

"We fully understand your idea about the safe door being loose. However, this is perfectly proper, as when attacked by heat at, say 12-1500 Fahrenheit, there is a chemical action takes place in the safe, that is, in the fireproof filling, and it throws off a steam vapor, and if the door fits tight the safe would blow up; the door expands and takes up some of the slack, and yet there must be sufficient opening for the steam to escape. You need have no fear but that your safe is in fact a fireproof safe, and high grade. . . . . I again affirm that your Victor safe is all right and fireproof. . . . . Burglar-proof is one thing; fireproof is another. Your burglar-proof door fits tight; your fireproof door loosely. In the very nature of the construction, if it fits tight, it would prove of no value."

The evidence of this witness as to the condition of the safe is corroborated by other testimony, and there is no substantial conflict in the evidence as to the condition of the safe. This witness was asked this question: "I will ask you what Mr. Barnett represented to you a No. 8 F. & B. safe was?" Objection was made to this question and overruled and the witness answered, "Just before the signing of the contract Barnett and I discussed the quality of the safe and he told me just what it was and what I would get. A No. 8 F. & B. Victor safe was a fire, water and burglar proof safe."

Counsel for appellant contends that this evidence was. clearly inadmissible and prejudicial to the appellant; that it related to conversations and negotiations had between the respondents and the appellant before the written contract. sued upon was entered into, and that all such conversations; and negotiations between the parties were merged in the written contract. Referring to the contract, it will be observed that the safe purchased is described in such contract as "One. No. 8 F. & B. Victor Safe." This description standing alone gives no information as to the character or description of the. safe purchased, and to give a meaning to such description requires some explanation, which may be found in the repre-. sentations made by the seller as to what was meant by the. use of such words, or by reference to some catalogue or printed matter wherein such safe was fully described.

In this case the question objected to called for a statement. by the witness of what the seller said such words meant or a description of the kind of safe the defendants were to receive under a No. 8 F. & B. Victor safe. This evidence in no. way contradicted, varied or extended the terms of the contract. It merely described and explained what was meant by the language used in the contract as No. 8 F. & B. Victor safe, and the kind and quality of a No. 8 F. & B. safe. This evi-. dence was clearly admissible. (Jones on Evidence, secs. 455, 456.)

One R. H. Chick, a salesman for the Norris Safe & Lock Co., was called as a witness for the defendants, and among other things testified that he had examined the safe in controversy, found it in a poor condition and not up to grade. He was then asked to describe the safe, and did so, showing its condition to be substantially as testified to by the witness Hagan. During the course of the examination of this witness he defined the term "fireproof," and said it was a relative term, and that a safe might be fireproof under certain conditions, and it might not; that he could not tell whether the safe was fireproof or not; that the words "F. & B." was a common term used by all manufacturers to mean a fireproof body containing within it a burglar-proof chest, the burglar-..

proof chest to be built exactly according to specifications that become standard. In other words, the outside of the chest should be two and a half thick and the body shall be an inch and a half thick. That form has been adopted· by various companies in different ways. The witness then testified as to methods adopted by different factories to make their safes fireproof and burglar-proof, and testified that "All doors in standard safes are either tongued and grooved or tight fitting."

Objection was made to the questions asked this witness and the evidence given by him in response thereto, which described how other manufacturers make their safes and compared the safe in controversy with safes of other manufacturers, and that the safe involved was not a standard· safe. because not made in accordance with rules and regulations adopted by standard manufacturers of safes. This objection was based upon the fact that this evidence did not fall within the warranty as claimed by the .defendants; and· that there was no pretense that a warranty had been given to the effect that the safe sold the respondents was made like other safes, or that the safe was made under any rule adopted by safe manufacturers generally, or any claim made that this particular safe bore any similarity of theory of construction for the protection of its contents with other safes.

We think this objection is well founded. By the contract the defendants agreed· to purchase a No. 8 F. & B. Victor safe, and the plaintiff in describing such safe told· the defendants that it was a burglar and fire proof safe. This amounted to an implied warranty that the safe purchased was a fire and burglar proof safe as such term is usually applied, and that the safe was suitable for the purpose for which it was purchased. (*Hunter v. Porter,* 10 Ida. 72, 77 Pac. 434; *Huntington v. Lombard,* 22 Wash. 202, 60 Pac. 414; *Lander v. Sheehan,* 32 Mont. 25, 79 Pac. 408; 13 Am. & Eng. Ency. of Law, 135; Benjamin on Sales, sec. 661; *Kellogg Bridge Co. v. Hamilton,* 110 U. S. 108, 3 Sup. Ct. 537, 28 L. ed. 86.)

The evidence of this witness to which particular objection was made went very much beyond the warranty. The war-

ranty was that the safe was to be a fire and burglar proof
safe and suitable as a safe, and the safe might have been in
accord with such warranty, although not manufactured like
other standard safes or upon the same theory and method
adopted by other manufacturers in order to make safes fire-
proof. If the safe in fact was a fire and burglar proof safe
as such term is usually considered, and was suitable to be
used as a safe, the fact that it was not made upon the same
principle as other safes or in the same manner or upon the
same theory, or of like material, would be wholly immaterial
and not a breach of the warranty. This evidence of this wit-
ness could have but one tendency, and that was to lead the
jury to believe that there had been a breach of warranty by
reason of the fact that the safe in controversy was not con-
structed upon the same plan as other standard safes or re-
sembled in construction other standard burglar and fire proof
safes. This evidence was prejudicial to the plaintiff and
clearly outside and beyond the warranty given at the time
the safe was sold. (30 Am. & Eng. Ency. of Law, 226.)
Any evidence which tended to show that the safe received
was not a fire and burglar proof safe under ordinary condi-
tions or was not according to the warranty, because of its plan
or method of construction or because of its disabled condi-
tion or the manner in which it bulged on the top or bottom
or side, or the doors closed or fitted, was proper and admis-
sible. But the fact that the safe was made differently from
other fireproof safes or not in accordance with the rules or
regulations adopted by other manufacturers, or evidence that
fireproof safes of other makes and name were not made upon
the same plan and theory as the safe in controversy or of
like material, was not admissible, and was clearly outside of
the terms of the implied warranty. There were two methods
open to the defendant either of which could be pursued in
showing the breach of warranty: First, that the safe received
was in a disabled condition, and because of such condition was
not a fire and burglar proof safe and fit or suitable to be used
as a safe; second, that the particular method or theory upon

which said safe was constructed, and the material which was used in its construction, were such as to render such safe unfit to be used as a safe and not fireproof as such term is generally recognized; and if the preponderance of the evidence was with the defendants upon either one of these propositions, then the duty of the jury was to find a verdict for the defendants. This same course of reasoning also applied to evidence offered by the plaintiff on rebuttal.

In rebuttal the plaintiff offered evidence to show that other safes manufactured by the Victor Safe & Lock Co., upon the same plan and theory of construction as the safe under consideration, had passed through fires and that the contents had been properly and adequately protected. This the trial court refused to admit. This was clearly error. The very best evidence that could possibly be received in support of the warranty claimed was made by the Victor Safe & Lock Co., that safes of similar kind, constructed upon the same plan and theory, and out of like material, had passed through fires and the contents were not materially injured. The fact that the safes to which such evidence was directed were a different size or different number than the particular safe under consideration would not render such evidence inadmissible, provided such safes were constructed upon the same general plan and theory and of the same material. The term "fireproof" as shown by the expert witnesses, familiar with safes, was a relative term, and a safe might be fireproof under some conditions and not under other conditions; and in this case the implied warranty being that the safe was fireproof, it was for the jury to determine whether or not the safe received was fireproof in the ordinary sense of the term and under ordinary and reasonable conditions.

The evidence received on behalf of defendants, over the objection of the plaintiff to which we have referred, and the evidence offered by the plaintiff in rebuttal and refused upon the objection of the defendants went to the very vitals of this case. We are unable from the record to say that the jury would have returned a verdict for the defendants if this evidence had not been received upon the part of the defend-

ants or had been received as offered on the part of the plaintiff. It is true the jury might have found for the defendants because of a breach of the warranty on account of the disabled condition of the safe, but from the evidence in the case we are not assured that this necessarily would have followed.

Several instructions given by the court were also erroneous for the reasons given above. This necessarily leads to a reversal of this case.

The judgment is *reversed.* Costs awarded to the *appellant.*

Sullivan, C. J., and Ailshie, J., concur.