## BEN F. LONG v. E. B. KENDALL.

(Filed September 4, 1906.)

1. REAL ESTATE—Sale of—Fraudulent Representation—Torts. In the sale of real estate, the expression of a mere matter of opinion as to the value thereof, made by the vendor, where the truth of the statement can be readily determined by the vendee as the vendor, and where no attempt is made to prevent an investiga-tion by the vendee, and where the vendee has an opportunity to investigate, and does not investigate to determine the correct-ness of the opinion expressed as to value, such statement so made as to value by the vendor will not be treated as such fraudulent representation as would vitiate the contract or be a cause for an action for fraud and deceit.

2. SAME—Contract of Sale. In the sale of property where the means of knowledge are general, and equally available to both parties, and the subject of purchase is alike open to their inspec-tion, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say in impeachment of the contract of sale on the grounds of fraud and deceit, that he was deceived by the vendor's misrepresentations.

3. TRIAL—Instructions to Jury—Withdrawing Evidence. Where in the trial of a cause, certain evidence is offered, objected to, and the objection overruled, and the evidence permitted to go to the jury, and where certain instructions as to the law are given in favor of the defendant over the objection of the plaintiff, and

after the jury have retired to deliberate on their verdict, and before a verdict is reached, the court, on reflection, concluded that the evidence was improper, and the instructions wrong, and the court calls the jury into open court and by a written instruction withdraws such evidence and such instructions from the jury, if such evidence was improper, and such instructions contrary to the law, such action of the court in withdrawing the same from the consideration of the jury will not constitute reversible error.

(Syllabus by the Court.)·

*Error from the District Court of Payne County; before Jno. H. Burford, Trial Judge.*

*Charles E. Bush,* for plaintiff in error.

*W. B. Williams,* and *Geo. P. Uhl,* for defendant in error.

### STATEMENT OF FACTS.

This case was commenced in the district court of Payne county, Oklahoma Territory, on the 22nd day of April, 1904, by E. B. Kendall, the defendant in error, against Ben F. Long, the plaintiff in error, to recover damages in the sum of fifteen hundred dollars ($1500.00) on an alleged guarantee in a contract of sale of a stock of merchandise which was made by and between the said E. B. Kendall, and Ben F. Long, on the 2nd day of April, 1904. The part of said contract of sale, wherein the plaintiff in the court below claimed that the defendant guaranteed said stock of merchandise, reads as follows:

"The said Ben F. Long agrees with and hereby guarantees to said E. B. Kendall that the said stock of goods mentioned above are of the value of twenty-three hundred dollars ($2300.00) ; that the cost mark of said goods is the cost mark representing the original cost of said goods at the wholesale house; and guarantee cost price at actual cost in St. Louis, Mo., that the stock is not moth-eaten, not dam-

aged in any manner more than an average stock of goods of its class."

The said E. B. Kendall, defendant in error, claimed that the invoice of said goods according to the cost mark was only $1946.12 and that the cost mark on said goods was twenty per cent. in excess of the actual cost of said goods at the wholesale house in St. Louis. That about one-half of said goods were almost worthless by being moth-eaten, rat-eaten, faded, spotted by water and exposure, shelf worn, discolored, frayed, soiled, broken, and damaged by unskillful handling and packing to the amount of at least seventy-five per cent. of its original value, and that the same was damaged at least sixty per cent. more than an average stock of its class.

To this petition the defendant, Long, plaintiff in error, here, in his answer first admits the making of said contract, and claimed that said contract was altered by an executed oral agreement which was made and entered into on the 4th day of April, two days subsequent to the making of the original contract. By the terms of said oral contract the said Kendall, defendant in error, accepted the stock of goods without invoicing the same, as the same had been shipped in inclosed boxes. The defendant in the court below also claimed damages in the sum of sixteen hundred and fifty dollars ($1650.00) for false and fraudulent representations which induced him to enter into the contract. That the said Kendall, defendant in error, falsely and fraudulently represented to him that the farm he was getting in exchange for this stock of goods was of great value, and was worth the sum of thirty-five hundred dollars ($3500.00) when in truth and in fact the said farm was not worth to exceed the

sum of two thousand dollars ($2000.00). To this answer a reply of general denial was filed. On the trial of the case in the district court, the trial judge permitted the introduction of testimony as to the cross-petition of said Long, showing his damages for the false and fraudulent representations of the said Kendall as to the value of said farm, and instructed the jury on that subject as to the law. After the jury had been out deliberating on their verdict for a number of hours, the trial court called the jury into open court, and by a written instruction withdrew from the consideration of the jury all the testimony as to the statements of Kendall as to the value of the farm, and all instructions given on that subject, to which the defendant, Long, then and there excepted. Afterwards the jury returned a verdict in favor of the plaintiff, Kendall, in the sum of five hundred and forty-seven dollars ($547.00). Motion for new trial was made, and overruled, and judgment rendered on the verdict, to all of which the defendant excepted, and brings the case here for review.

Opinion of the court by

IRWIN, J.: The first assignment of error to which the counsel for plaintiff in error cite the court as a cause for a reversal of this case is that the court erred in permitting the witness S. E. McNaul to testify as to the value of the goods when he invoiced the same in 1904, at the town of Agra, Oklahoma. The ground of the objection to the testimony of this witness in the court below was that he had not shown himself competent, and qualified to testify on the subject. We think a reference to the case made at pages 55 and 56, will show that this witness was fully qualified to tes-

tify.  He there testified to many years' experience in the handling of this kind and character of goods, and that he had been for years a traveling salesman on the road, and is thoroughly familiar with the quality and price of said goods. The objection urged by counsel for plaintiff in error is that while he has shown a general qualification, and general knowledge of this class of goods and their prices; that he has not shown that he ever had any experience in the particular locality where this transaction occurred.  We do not think this objection is tenable.  The question here before the jury was as to the general depreciation of said goods, and the percentage of depreciation of the particular goods in question. This, it seems to us would not be dependent upon questions of latitude and longitude, and would not depend on any particular locality.  We think the depreciation, when measured by the prices, would be the same whether in Maine, or Texas, and this is the opinion given the expert in his testimony on page 62 of the record, when he was asked the question as to whether the depreciation would vary with localities, or whether it would be general.  The answer is, "The depreciation would be general.  It don't make any difference whether it was in Texas, or California, in my judgment."  And this we think was reasonable.  The question was, what was the general depreciation of this stock of goods in connection with the values, disclosed in the evidence?  That depreciation was asked for, based upon a percentage as to the cost price, and while the cost price might be different in different localities, where the estimate is based upon the percentage of the cost price, the variance in the price would make no difference..  We think there was no error in admitting the testimony of this witness.

The second assignment of error is that the court erred in excluding the testimony in reference to the execution of the oral contract that changed the written contract which was made by and between plaintiff and defendant, and in support of this, counsel cite section 7, of art. 5, chap. 16, of the Statutes of 1893, which provides as follows:

"A contract in writing may be altered by a contract in writing, or by an executed oral agreement and not otherwise."

Now, we do not think this assignment of error is well taken. We have examined the entire record, and so far as we can find, there is no express exclusion of any testimony upon this point. At page 131, 132, and 133, the defendant in the court below was permitted, without objection, to testify to the entire transaction from the time the goods were sold to the plaintiff up to the time of the delivery. He goes on and tells all that took place, and the details of the transaction as to the sale of the goods and the delivery of the deed and money in escrow, and the delivery of the goods, and does not there speak of any subsequent executed oral contract. Whether the evidence is labeled "evidence as to executed oral contract," or by whatever name it is known whatever evidence there was on this subject, known to the defendant, went to the jury in his testimony, and if there is any where in the record that the court has sustained an objection, or excluded testimony upon the question of this subsequent orally executed contract, so-called by plaintiff in error, we are unable to discover it, and counsel in their brief have not seen fit to point it out to us, and we do not think it is any part of the business of the court to minutely and carefully scrutinize every word and syllable in an entire and

voluminous case made to discover errors which counsel claim the record contains, which they do not deem advisable to particularly point out to us.

The third assignment of error is that the court erred in giving instruction number 11, to the jury, that is, the instruction which was given to the jury after they had been for some time deliberating on a verdict, and before they arrived at a conclusion, withdrawing from their consideration the evidence and instructions relating to the question of the representations made by Kendall of the value of the farm traded to Long. Now, the only question to be determined by this court in deciding whether the action of the district court in this particular was right, is to determine whether the facts disclosed by this evidence was such a fraud as would vitiate the contract, or would entitle the party to damages for fraud and deceit. The representations as having been shown by the answer of the defendant as having been made by Kendall, were at best, mere expressions of opinion. According to the statements in the answer, Kendall represented to the defendant, Long, that the farm he was trading him was worth $3500.00. This would be a mere matter of opinion. There is nothing in the record to show but that Long was just as familiar with the land as Kendall—had just as good an opportunity to know its value. The record shows nothing that would indicate any attempt on the part of Kendall to prevent Long from investigating as to the value of the land, and we take the true rule to be that where the opportunities for investigation are equal between the parties, where one has the same opportunity to know the facts as the other, and to determine the correctness of the opinion as to the value expressed, that mere mistakes, or misstate-

ment as to the value will not amount to a warranty, or be a cause for rescinding the sale on the ground of fraud, or entitle the party to bring an action for fraud and deceit.

Judge Wood, in his latest edition of Addison on Torts, vol. 2, p. 419, sec. 1185, lays down the rule that:

"Where the real quality of the thing is an object of sense obvious to ordinary intelligence, and the parties making and receiving the representation have equal knowledge or means of acquiring information, and the correctness or incorrectness of the representation may be ascertained by the party interested in knowing the truth, by the exercise of ordinary inquiry and diligence, and the representation is not made for the purpose of throwing the latter off his guard and preventing him from making those inquiries and examinations which every prudent person ought to make, there is no warranty of the person's knowledge of the truth of his representation, or of the fact being as it is stated to be.  *  *  *"

The same author, at page 420, sec. 1186, says:

"When the representation is made concerning something which is mere matter of opinion, which every man can exercise his own judgment upon and inquire about, it is the plaintiff's own fault if he suffers himself to be deceived If the person giving his opinion, or expressing his belief, does not possess any exclusive means of knowledge, and merely says that which he thinks to be true, there is no fraud, however erroneous may be the statement he has made. If, therefore, a defendant having reason to believe, and actually believing a particular fact to be true, has represented it as such to the plaintiff, he is not, as we have seen, liable to an action merely because it turns out that he was mistaken, and his representation was false.  *  *  *"

The supreme court of the United States, in the case of *Slaughter's Administrator, v. Gerson,* 13 Wall, 370, says, in the syllabus:

"1. The misrepresentation which will vitiate a contract of sale, and prevent a court of equity from aiding its enforcement, must relate to a material matter constituting an inducement to the contract, and respecting which the complaining party did not possess at hand the means of knowledge; and it must be a misrepresentation upon which he relied, and by which he was actually misled to his injury.

"2. Where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say, in impeachment of the contract of sale, that he was deceived by the vendor's misrepresentations."

And, in the body of the opinion by Mr. Justice Field, speaking for the court on page 383 of the opinion, used this language:

"A court of equity will not undertake any more than a court of law, to relieve a party from the consequences of his own inattention and carelessness. Where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he has been deceived by the vendor's misrepresentations. If, having eyes, he will not see matters directly before them, where no concealment is made or attempted, he will not be entitled to favorable consideration when he complains that he has suffered from his own voluntary blindness, and has been misled by over-confidence in the statements of another."

Mr. Story, in his excellent work on Equity Jurisprudence, 3rd. ed. vol. 1, sec. 199, lays down this rule:

"Where a party can protect himself by ordinary care and prudence, he must do so. And if, with full means of knowledge, being equally able to judge of a matter for himself, he relies upon the representations of another, that, should he stand on equal footing, without exercising the means of knowledge open to him, neither courts of law nor courts of equity will relieve him from the effect of such folly."

In the case of *Miller v. Craig*, 36 Ill. 109, the supreme court of Illinois says:

"When parties are negotiating for the purchase and sale of property, real or personal, each party has a right to exalt the value of his own property to the highest point his antagonist's credulity may bear, and depreciate that of his opponent; if there is opportunity to examine the property, such boastful assertions, or exaggerated descriptions can not be considered as amounting to fraudulent representation or deceit."

Now, decided by the rule enunciated by these authorities, this portion of the answer of the defendant in the court below did not state any cause of defense, and had a demurrer been filed thereto, would undoubtedly have been sustained by the court. This being true, any evidence offered to prove that issue, when objected to, was not admissible, and it was error for the court to receive such testimony. It was also error for the court to instruct the jury upon this theory of defense, and we think that at any time during the trial and before final judgment that such error was discovered by the trial court, it was his duty to correct that error by withdrawing that issue from the consideration of the

jury, such a course, being preferable to allowing the cause, after the discovery of such error by the court, to proceed to final judgment, and then seeking to rectify the error by granting a motion for new trial. This latter course would cause unnecessary costs, and useless expense to both parties. Hence, we think the court was right in taking the course he did, and withdrawing the entire matter from the consideration of the jury before they had arrived at a verdict, and the court having done so by a proper instruction in open court, we do not think it is any cause for a reversal of this cause.

Counsel for defendant in error devoted a considerable portion of their brief to a discussion of the act of the territorial legislature permitting amendments to the case made, and we think that to some extent the contention of counsel is correct, and that his criticism is worthy of attention; but in that connection we desire to call the attention of the writer of defendant in error's brief to certain paragraphs in his own statement. In the course of his brief, in sustaining certain positions which he assumes, he cites certain cases without giving the court any light as to where such cases may be found. Illustrative of this, we call attention to his brief at page 8, where he cites the case of *Bessingham v. Syck, et al*, and then quotes from that authority. Also, on page 9, in a similar way, he cites the case of *Huffman v. Wilhelm,* and these two citations are the only reference made to these cases in the entire brief, and no where is the court cited to where these cases may be found. Now, it seems to us that common sense and reason would convince attorneys that it is not the duty of this court to run the gauntlet of the entire legal world and examine the reports of

all the states of the Union, and all of the courts of the world, to find cases referred to in briefs where the counsel are too indolent to cite the volume and page where the case may be found, to the court. It might as well be understood first as last, that this court will not use or quote authorities cited in briefs of counsel where the court, volume, and page is not cited, so the court may examine the original authorities, and compare them with the quotation, and determine its correctness. Now, we think while the writer of the brief for defendant in error is devoting so much time to directing the legislature in their line of duty, that he might put a little attention to his own conduct, and before seeking to remove the mote from his brother's eye, that he cast the beam out of his own eye. We make this remark for the benefit of all attorneys practicing before this court, that they may understand when they cite authorities to this court. they should cite the court, the volume, and page of the report, and when they call the attention of the court to errors in the record, they should cite the court to the page of the record.

Having examined this entire record, and finding no reversible error therein, the action of the district court is hereby affirmed, at the cost of the plaintiff in error.

Burford, C. J., who presided in the court below, not sitting; all the other Justices concurring.