SHAWNEE LIGHT & POWER CO. v. SEARS.

No. 1962, Okla. T.  Opinion Filed April 17, 1908.

(95 Pac. 449.)

1. **TRIAL—Demurrer to Evidence—Operation and Effect.** A de-murrer to the evidence admits all the facts which the evidence in the slightest degree tends to prove, and all the inferences or conclusions which may be reasonably and logically drawn from the evidence.  On a demurrer to the evidence, the court cannot weigh conflicting evidence, but will treat the evidence as with-drawn which is most favorable to the demurrant.

2. **PLEADING—Issues, Proof, and Variance—Failure of Proof.** A party will not be driven out of court simply because his petition alleges more than has been proven, when the unproven allega-tions are not necessary to authorize a recovery.  Nor will his action be denied merely because the testimony offered does not support certain averments contained in the petition when it does support others which are sufficient to authorize a recovery.  Nor is this holding in disregard of the rule of pleading and practice which prohibits a variance between the allegations made and proof shown.

3. **TRIAL—Demurrer to Evidence—Operation and Effect—Implied Admissions of Demurrant.** Where, in a case brought for damages for injuries incurred by coming in contact with defendant's appli-ances, part of the system in use by an electric light company, and there is a general denial to plaintiff's petition, and on a demurrer to plaintiff's evidence it is insisted that there is no evi-dence supporting the allegation that defendant was responsible for the condition of the appliance causing the injury, it is com-petent in determining this question to consider the entire conduct of the trial on the part of such defendant, its pleading, cross-examination of the witnesses, and admissions, and if these, coupled with the deductions which may be inferred and logically drawn from the evidence introduced, show to the satisfaction of the jury that it does not controvert a particular fact strictly within the issues, and establish the responsibility, it is sufficient.

4. **ELECTRICITY—Care Required.** An electric light company using the public streets of a municipality for its poles, wires, and appli-ances, in conducting its business, is required to exercise the highest degree of care, and to maintain in the best possible con-dition the best appliances known to the science, to render its business safe, and to use that degree of care, caution, and cir-

cumspection in keeping with the dangerous character of its business; but it is not an insurer against unforeseen and unavoidable accidents.

5.     SAME—Presumptions and Burden of Proof. In consideration of the dangerous character of the element used in the business of an electric light company, and the high degree of care required of it to protect the public from injury by coming in contact with its appliances, when it is shown, in a case against it by the evidence, that one on the public streets in a proper place is injured without fault on his part by improper insulation or derangement of its appliances, a presumption of negligence arises which casts the burden on the defendant of showing that it exercised due care.

(Syllabus by the Court.)

*Error from District Court, Pottawatomie County; before B. F. Burwell, Judge.*

Action by May Sears, by her next friend, F. M. Sears, against the Shawnee Light & Power Company. Judgment for plaintiff, and defendant brings error. Affirmed.

This was an action brought in the district court of Pottawatomie county by May Sears, by her next friend, F. M. Sears, against the Shawnee Light & Power Company, to recover damages for injuries received by her in coming in contact with a guy wire and iron rod attachment, which were heavily charged with electricity, and which sustained a pole planted on one of the public streets of Shawnee and used by defendant in operating its plant. The case was tried to a jury, and on the plaintiff introducing her evidence the defendant demurred thereto, which demurrer was by the court overruled. The court then instructed the jury, which returned a verdict in favor of plaintiff for $6,680. The defendant filed its motion for new trial, which was by the court overruled, and the case is before us on proceedings in error.

*B. B. Blakeney* and *J. H. Maxey, Jr.,* for plaintiff in error.
*Woods & Biggers,* for defendant in error.

DUNN, J. (after stating the facts as above). Six assignments of error are discussed in the brief of plaintiff in error. The

first is: "The court erred in overruling the demurrer of plaintiff in error to the evidence offered by defendant in error." And in this connection it insists there was a variance between the allegations and the proof. The balance of the assignments relate to the alleged errors in the instructions given by the court to the jury.

The petition of plaintiff in this case describes with much minuteness and detail the location and situation of the pole, guy wire, and iron rod attachment, and the connection thereof with the defendant company in its operation of its plant, and avers with particularity and minuteness the alleged negligence and carelessness of the defendant company in its failure to provide and maintain proper means to keep the electricity, which it was using in its main wires which were attached to the pole above mentioned out of the said guy wire, and iron rod attachment, which supported the same, and charges that by virtue of this negligence and carelessness the guy wire and iron rod attachment became heavily charged with a deadly and dangerous current of electricity from the wires of the defendant company, and that, by virtue of this negligence, plaintiff was injured when she came in contact with it on the 1st day of May, 1904.

The proof in the case showed substantially the following facts: That at the time of the injury, May Sears was a child of about 11 years of age, and on the morning of her injury left her father's house between 6 and 7 o'clock on an errand. That on her route was the pole with the guy wire and iron rod attachment situated near a footpath at the edge of the place in the street where the sidewalk is usually placed. That on this morning, it having rained the night previous, the ground was muddy, and, as she approached the guy wire and iron rod attachment, her foot slipped on the soft ground, bringing her in contact with them. That she immediately fell insensible to the ground, and on being rescued it was found that she had sustained permanent and lasting injuries; the flesh and bone of one of her limbs being

literally burned away, leaving her a helpless cripple. The evidence further disclosed that the wire and rod were charged with electricity, as it sputtered from there, and that a telephone wire which ran from this pole to the house of one of the neighbors was cut by him during the previous night, owing to the fact that his telephone kept constantly ringing, and that it ceased after the wire was cut.

The answer of defendant in the case is a general denial and an allegation that:

"If the plaintiff received any injury, it was because of her own carelessness and contributory negligence or the carelessness and contributory negligence of her parents in permitting her to be in a place of danger, and in handling and playing with the wires' of the plaintiff (defendant)."

On the introduction of the evidence before the jury, and just prior to the time when plaintiff rested, the defendant entered of record an admission "that the pole and the guy wire was a part of the system in use in Shawnee by the defendant, and that the pole testified to by the witnesses was used by the telephone company also, and that it had been erected by the light and power company." Defendant insists that, by reason of the failure of plaintiff to establish the details charged in her petition, there was a variance between the plea and the proof, insisting that "if the plaintiff describes with needless particularity and minuteness a tort and the means by which it was effected, he will be required to prove the same with more particularity than he would if he had pleaded his cause of action in more general terms." While it is conceded that this is the general rule of pleading, it is not without its exceptions, and in cases of this character, where the evidence introduced is not different than that charged and shown a right in plaintiff to recover for the very injury and wrong complained of, and defendant is not confronted by a different case before the jury than faced him in the pleading, the variance, if any there be, is harmless. Wilson's Rev. & Ann. St. Okla. 1903, par. 4337.

On this point the Supreme Court of Missouri, in the case of *Gannon v. Laclede Gaslight Company*, 145 Mo. 502, 46 S. W. 968, 47 S. W. 907, 43 L. R. A. 505, spoke as follows:

"A party will not be driven out of court simply because his petition alleges more than has been proven, when the unproven allegations are not necessary to authorize a recovery; nor will his actions be denied merely because the testimony offered does not support certain averments contained in his petition, when it does support others which are sufficient to authorize a recovery. Nor is this holding in disregard of the rule of pleading and practice that prohibits a variance between the allegations made and proof shown."

On this same point the Supreme Court of Oregon, in the case of *Boyd v. Portland Electric Co.*, 40 Or. 126, 66 Pac. 576, 57 L. R. A. 619, said:

"Where plaintiff has made a *prima facie* case of negligence by showing that an action happened resulting in his injury, he is not obliged to prove any specific negligence, though it may have been alleged, since the presumption is that the accident would not have happened had proper care been taken."

In the discussion of this case, Chief Justice Bean, who delivered the opinion of the court, says:

"The defendant contends, however, that as the complaint in hand avers that the wire which caused the injury was weak and defective, and insufficiently stretched and fastened, the plaintiff was obliged to point out by his testimony some defects in the particulars alleged. But we are unable to concur in this view. The doctrine of '*res ipsa loquitur*' alluded to is a mere rule of evidence. 2 Thompson, Neg. 1227 *et seq.* It proceeds on the theory, as the term implies, that the happening of an accident under certain circumstances is of itself *prima facie* evidence of negligence, and when it is evidence of the particular negligence charged in the complaint, the plaintiff is entitled to invoke the rule. Thus, in *Trenton Pass Ry. Co. v. Cooper*, 60 N. J. Law, 219, 37 Atl. 730, 38 L. R. A. 637, 64 Am. St. Rep. 592, with note, the negligence averred was the insufficient bending or fastening of the rails of a street railway, and it was insisted that the plaintiffs were obliged to point out and establish some particular defect or insufficiency

as alleged. The court held, however, that the escaping of electricity from the rails was presumptive proof of the negligence alleged, thus bringing the case within the doctrine of *res ipsa loquitur*. In *Snyder v. Wheeling Elec. Co.*, 43 W. Va. 661, 28 S. E. 733, 39 L. R. A. 499, 64 Am. St. Rep. 922, with note, the negligence charged was insufficient fastening, and, although the court held that no evidence of other acts of negligence was competent, it ruled that the mere fact that the wire fell created a *prima facie* presumption of negligence, sufficient to support the action unless rebutted by something appearing in the case."

On both propositions, the question of variance and failure of proof, a case from the Supreme Court of Alabama (*McKay & Roche v. Southern Bell Telephone Co.*, 111 Ala. 337, 19 South. 695, 31 L. R. A. 589, 56 Am. St. Rep. 59) is particularly applicable to the case at bar. The court says in the syllabus:

"The plea of the general issue puts in issue all the material allegations of the complaint, and imposes upon the plaintiff the necessity of proving them; but the defendant may, by his course of conduct on the trial, show to the satisfaction of the jury that he does not really controvert a particular fact strictly within the issue, but waives formal proof thereof, and in such a case it should be left to the jury to say whether it is waived or not."

Mr. Justice Head, in his discussion of the point raised in that case which was similar to the one at bar, said:

"There does not appear to have been any real question upon the trial as to the operation of the railway and telephone lines by the defendants, respectively, and the plaintiffs omitted to make direct proof thereof, at least as to the telephone company. * * * The conduct of the trial by these defendants from beginning to end, the character and manner of the development and production of the testimony, the cross-examination of /the plaintiffs' witnesses, the absence of a suggestion, express or implied, in the conduct of the trial on the facts, that any other than the defendants maintained and operated the wires, respectively, all tended to show an implied admission that they were the parties, and authorized the jury so to infer. It is certainly true that the plea of the general issue puts in issue all the material allegations of the complaint, and imposes upon the plaintiff the necessity of proving them; but the rule is a reasonable one. No set form of proof

is prescribed. The defendant may, by his course of conduct on the trial, show to the satisfaction of the jury that he does not really controvert a particular fact strictly within the issue, but waives formal proof thereof, and, in such a case, it should be left to the jury to say whether it is waived or not."

And so in the case at bar it may be said that, while it is true there is lacking in the record specific proof of many of the formal allegations in the petition put in issue by general denial, when the answer of defendant is considered in conjunction with the course and conduct of the trial, taken in connection with the admission on the part of the counsel for defendant, and giving all of these matters the probative force that were given them by the trial court and by the jury, we are unable to say that there was lacking evidence to sustain the verdict. The rule of this court on demurrers to evidence has been laid down in a number of cases, and is as follows:

"A demurrer to the evidence admits all the facts which the evidence in the slightest degree tends to prove, and all the inferences or conclusions which may be reasonably and logically drawn from the evidence. On a demurrer to the evidence, the court cannot weigh conflicting evidence, but will treat the evidence as withdrawn which is most favorable to the demurrant."

The other questions urged and argued by defendant relate to the instructions given by the court in reference to the duty which defendant owed to the plaintiff and the public, and, as they all relate generally to this subject, we will discuss them together. Defendant takes exception to the giving by the court of instruction No. 3, which is as follows:

"The jury are further instructed that it was the duty of the defendant to see that its electric light lines and appliances were in a safe condition for those who might be brought in close proximity to them in traveling along the public streets, and if you find from the evidence that the plaintiff, while traveling along the street, and without fault on her part, came in contact with one of the guy wires of the defendant, and that the same was charged with a current of electricity, from which the plaintiff sustained the injuries complained of, then the plaintiff is en-

titled to recover damages, in this action for the injuries thus sustained as explained in these instructions, and no presumption will be indulged in that the plaintiff was guilty of contributory negligence, if there was nothing in the appearance of the wire or surroundings to indicate to the plaintiff its dangerous condition."

And No. 4, which is as follows:

"You are further instructed that if you find from the evidence that the guy wire of the defendant, with which the plaintiff came in contact (if you find from the evidence that she came in contact with it), was carrying a current of electricity which caused the injuries complained of to the plaintiff, this fact raises the presumption that the defendant had failed in its duty to the plaintiff."

Also, No. 9, which is as follows:

"You are instructed, to entitle the plaintiff to recover, the burden is upon her to prove by a fair preponderance of the evidence, not only that she was injured, but also that the defendant had charged the wire with which the plaintiff came in contact with a current of electricity; and in this connection you are instructed that, if you find from the evidence that the wire with which the plaintiff came in contact was the property of the defendant, and then being used as a part of its electric light system, and that the same was then charged with a deadly current of electricity, the presumption would be that the same was charged by the defendant."

And that the court erred in refusing to give the following instructions which were offered by it:

"No. 1. You are instructed that the defendant is not an insurer and is not required to keep its property in such shape that in no event can parties using the public streets be injured; but it is only required to exercise the highest degree of care known to man and to the science, in order to prevent such injury, and, when such care is exercised, it will not be liable for unavoidable accidents or injuries. No 2. You are further instructed that if, from the evidence, you find that the current which charged the guy wire referred to in the evidence came from or was communicated by the telephone wires upon the pole referred to in the evidence, and that the same was not charged by the defendant, then, and in that event, the defendant would not be liable for the

injury which the plaintiff received, unless you further find that the defendant assumed the same obligation to protect such wires from the negligence, if you find such to have been the case, of the telephone company. No. 3. You are further instructed that if you should find that the defendant did not charge the wire upon which the plaintiff was injured, but that the same was charged by an electrical storm, or otherwise than by the act of the defendant, then and in that event the defendant would not be liable."

The defendant contends that instruction No. 3 given by the court places too high a burden upon it, virtually making it an insurer against all accidents, and that for this it was erroneous, and that in lieu thereof the court should have given instruction No. 1, offered by it. We have carefully considered the effect of instruction No. 3, and while we are not fully satisfied of its correctness, if given on a full trial, we believe, when it is weighed in the light of this record, that it was not error. In order to intelligently discuss it and to consider its effect, it is necessary for us to look not only to the law governing the duties of defendant to plaintiff and the public generally, but also to consider the condition of the trial at the time this instruction was given. The court states in its opening statement to the jury that, "for a detailed statement of the issue, you will be permitted by agreement of counsel to take to your jury room the petition of the plaintiff, and the answer of the defendant," and instruction No. 1 states that "under the issues as joined by the pleadings in this case, the burden is upon the plaintiff to prove her cause of action as alleged in her petition by a fair preponderance of all the evidence, and, unless she has so proven, it will be your duty to find for the defendant." This instruction is virtually a limitation upon all further instructions given by the court. In addition to this, at the time instruction No. 3 was given, the plaintiff had offered her evidence and had rested; the defendant had offered no testimony, but had rested upon the evidence of the plaintiff. She had shown beyond dispute the injuries received, and how they had been caused by coming in contact with the guy wire and iron rod attachment

of the defendant, and instruction No. 3, under the limitations mentioned, said to the jury that it was the duty of defendant to keep its appliances in a safe condition for those who might be brought in close proximity with them in traveling along the public streets, and if plaintiff, without fault on her part, was injured as complained of, then she was entitled to recover damages in the action.

That defendant is not an insurer, and that instruction No. 1 offered by it correctly states the law, is the holding of practically all the authorities upon this point. 20 Cyc. p. 471; *New Omaha Light Co. v. Anderson,* 73 Neb. 84, 102 N. W. 89; *Knowlton v. Des Moines Edison Light Co.,* 117 Iowa, 451, 90 N. W. 818; *Norfolk Ry. & Light Co. v. Spratley,* 103 Va. 379, 49 S. E. 502; *Citizens' Ry Co. v. Gifford,* 19 Tex. Civ. App. 631, 47 S. W. 1041; *City of Denver v. Sherret,* 88 Fed. 226, 31 C. C. A. 499. While the defendant is not an insurer, still it is held to the highest degree of care in keeping its appliances "safe," and we believe the correct rule to be as is said by Justice Cook, speaking for the court of North Carolina in the case of *Mitchell v. Raleigh Electric Co.,* 129 N. C. 166, 39 S. E. 801, 55 L. R. A. 398, 85 Am. St. Rep. 735:

"The defendant company was engaged in the business of manufacturing, producing, leasing, and selling light made from the use of electricity, which is the most deadly and dangerous power recognized as a necessary agency in developing our civilization and promoting our comfort and business affairs. It differs from all other dangerous utilities. Its association is with the most inoffensive and harmless piece of mechanism, if wire can be classified as such, in common use. In adhering to the wire it gives no warning or knowledge of its deadly presence; vision cannot detect it; it is without color, motion, or body; latently and without sound it exists, and, being odorless, the only means of its discovery lie in the senses of feeling communicated through the touch, which, as soon as done, becomes its victim. In behalf of human life and the safety of mankind generally, it behooves those who would profit by the use of this subtle and violent element of

nature to exercise the greatest degree of care and constant vigilance in inspecting and maintaining the wires in perfect condition."

The rule is well laid down in the case of *Giraudi v. Electric Imp. Co.,* 107 Cal. 120, 40 Pac. 108, 28 L. R. A. 596, 48 Am. St. Rep. 114, as follows:

"An electric company, in using the dangerous force of electricity not generally used, is required to use very great care to prevent injury to person or property, and it is sufficient proof of negligence for it not to raise its wires so high above a roof on which they are placed that those having occasion to go there will not come in contact with them."

Speaking on this point, the Supreme Court of Colorado, in the case of *Denver Electric Co. v. Simpson,* 21 Colo. 371, 41 Pac. 499, 31 L. R. A. 566, says:

"A person carrying on a business perilous to the public is bound to exercise that reasonable care and caution which would be exercised by reasonably prudent and cautious persons under the same or similar circumstances. The care should increase as the danger does, and, when the business is attended with great peril to the public, the care to be exercised is commensurate with the increased danger."

The Supreme Court of Kentucky goes even further than either of these in the case of *McLaughlin v. Louisville Electric Light Co.,* 100 Ky. 173, 37 S. W. 851, 34 L. R. A. 812, and says:

"At places where people have the right to go for work, business, or pleasure, electric light companies are required to afford them perfect protection from its wires, by having them perfectly insulated."

While we do not agree in its entirety with the Kentucky case, we do hold an electric light company, using the public streets of a municipality for its poles, wires, and appliances in conducting its business, is required to exercise the highest degree of care, and to maintain in the best possible condition the best appliances known to the science, to render its business safe, and to use that degree of care, caution, and circumspection in keeping with the dangerous character of its business; but it is not an insurer

against unforeseen and unavoidable accidents. At the time instruction No. 3 was given by the court, plaintiff's evidence had shown that without fault on her part, proceeding on the public highway in a place where she had a right to be, she came in contact with the appliances of the defendant company at the edge of the foot walk; that the appliance was one in a most exposed place, and where people were liable to come in contact with it, and one which in the operation of its plant the defendant did not use for the transmission of its current, and in which its current would not then have been except for the want of due care and regard for safety on its part or its servants. Under these circumstances, this instruction was given, and the question arises: Was the company liable from a showing of those facts? We hold that it was, and that this is sustained by a great weight of authority in this country and in England. Hammon on Evidence, p. 270, § 66; Joyce on Elect. Law, § 1048; Cooley on Torts, p. 798; 2 Jaggard on Torts, pp. 864, 938; Shearman & Redfield on Law of Negligence, § 60; *Suburban Elect. Co. v. Nugent,* 58 N. J. Law, 658, 34 Atl. 1069, 32 L. R. A. 700; *Newark Elect. Light & Power Co. v. Ruddy,* 62 N. J. Law, 505, 41 Atl. 712, 57 L. R. A. 624; *Brown v. Edison Elect. Co.,* 90 Md. 400, 45 Atl. 182, 46 L. R. A. 745, 78 Am. St. Rep. 442; *Western Union Tel. & Tel. Co. v. State,* 82 Md. 293, 33 Atl. 763, 31 L. R. A. 572, 51 Am. St. Rep. 464; *Larson v. Central Ry. Co.,* 56 Ill. App. 263; *Ennis v. Gray,* 87 Hun. 355, 34 N. Y. Supp. 379; *Arkansas Tel. Co. v. Ratteree,* 57 Ark. 429, 21 S. W. 1059; *Haynes v. Raleigh Gas Co.,* 114 N. C. 203, 19 S. E. 344, 26 L. R. A. 810, 41 Am. St. Rep. 786; *Howser v. Cumberland & Penn. R. R. Co.,* 80 Md. 146, 30 Atl. 906, 27 L. R. A. 154, 45 Am. St. Rep. 332; *Uggla v. Street Ry. Co.,* 160 Mass. 351, 35 N. E. 1126, 39 Am. St. Rep. 481; *Snyder v. Wheeling Elect. Co.,* 43 W. Va. 661, 28 S. E. 733, 39 L. R. A. 499, 64 Am. St. Rep. 922.

A quotation from the text-book cited above, and from the courts whose opinions are noticed, will best elucidate the rule

we have laid down. Mr. Hammon, in his work on Evidence *supra,* says:

"Persons licensed to maintain overhead wires in public places for the transmission of electricity for power, illumination, or other purposes, are bound to use a high degree of care for the protection of the public; and if, by reason of imperfect insulation or derangement of the wires, any one is injured in person or in property through contact therewith, a presumption of negligence arises, which casts on the defendant the burden of showing that he exercised due care."

Jaggard on Torts, at page 864, says:

"A live wire is exceedingly dangerous. So that proof of contact therewith and consequent damages makes out a complete case of *prima facie* negligence, and throws the burden on the defendant to show that such wire was in the streets without fault on his part."

And further, at page 938:

"While it is true, as a general proposition, that the burden of showing negligence on the part of the one occasioning an injury rests in the first instance upon the plaintiff, yet, * * * when he has shown a situation which could not have been produced except by the operation of abnormal causes, the *onus* rests upon the defendant to prove that the injury was caused without his fault."

Shearman & Redfield on the Law of Negligence, *supra,* says:

"When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care."

The case of *Suburban Electric Company v. Nugent, supra,* was one decided by the Supreme Court of New Jersey. Christian Otto was a member of the police force of the city of Elizabeth. His dead body was found lying about three feet from the base of one of the electric light poles of the plaintiff in error. No one was present when he came to his death, and there was no direct evidence to show how it was caused; but it appeared from plain-

tiff's proofs that there was fastened upon the pole at the foot of which decedent's body was found a reel, around which was wound a wire rope used for the purpose of raising and lowering one of the defendant's arc lamps, that the reel was about on a level with the top of a man's head, and that the wire rope around it was practically uninsulated and was heavily charged with electricity. There was upon his left hand a freshly made burn, and his blood was found in an abnormal state, such as is found in the bodies of persons who have died from electric shock. This was the evidence on which the court denied a nonsuit requested by defendant, and the court, by Gummere, J., on these facts, said:

"These facts, unexplained, not only make it reasonable to suppose that the decedent came to his death through having touched with his hand the uninsulated wire upon the reel which was fastened to the defendant's electric light pole and thereby received a fatal shock, but exclude any other inference. For such a death the defendant was plainly responsible. It was using, in the public streets of Elizabeth, an agency dangerous to human life, and it was bound to take every reasonable precaution to protect the public, while using those streets, against injury from that agency. The maintaining upon a reel, which was fastened to an electric light pole so near to the ground as to be within easy reach, of an uninsulated wire heavily charged with electricity, was, in my judgment, a gross neglect of the duty which it owed to the public."

The case at bar is a stronger case, for in the case cited the wire touched by decedent was as high as the top of his head. He apparently had no duty to perform in connection with it, and the liability of the defendant grew out of the fact, and that fact alone, that it was its duty to have kept its current out of appliances of that character, and that the decedent was not guilty of contributory negligence in his reliance upon the performance of such duty. The guy wire and iron rod attachment in the case at bar were the appliances of the defendant company which were not used by them in conveying electricity. They were not constituted for this purpose and were no part of the company's plant or system designed for that purpose. No one would be presumed

to regard it necessary to beware of appliances of this character located along the highway, as were they, or to suspect that they would be charged with electricity. They had nothing to do with the transmitting of either light or power. They were simply placed in aid and support of the pole from which the other wires were suspended. No possible degree of negligence could be imputed to one in coming in contact with them and being injured because of their condition. A higher degree of care and responsibility by reason of these facts was upon the defendant to make them safe, than existed in reference to that part of the system used for transmitting electricity, and yet the courts have uniformly held that, where the wires of an electric company used for the current become out of order, broken, disarranged, or, through lack of insulation, parties by coming in contact therewith are injured, the injury itself is *prima facie* caused by negligence, and the establishment of it then places the burden upon the company to show that it was not occasioned through its fault or negligence.

Such is the holding in the case of *Western Union Telegraph & Telephone Co. v. State, supra.* The court holds in the syllabus:

"That the defendants, using on the highway dangerous agencies, were bound so to manage them as not to injure persons lawfully upon the streets, and if, because their appliances are not in good order, a person is injured, a *prima facie* presumption of negligence arises in the absence of evidence showing that the defect originated without the fault of the defendants."

In the discussion of this case, Page, J., who wrote the opinion, speaking for a unanimous court, speaks as follows:

"The privileges so granted, thus to incumber the public highway with appliances so likely to become dangerous to the public safety unless properly employed and controlled, imposed upon them, and each of them, the duty of so managing their affairs as not to injure persons lawfully on the streets. They owed it to Nelson that his lawful use of the street should be substantially as safe as it was before the telegraph and railway plants had so occupied it. It was their plain duty, not only to properly erect their plants, but to maintain them in such condition as not to

endanger the public. It follows from this that, if the property of the defendant was not in proper condition and by reason thereof Nelson was injured, these facts alone, in the absence of other evidence to show that the defect originated without the fault of the companies, afford a *prima facie* presumption of negligence. In such a case the doctrine of *'res ipsa loquitur'* ('a simple question of common sense', Whittaker's Smith on Neg. 423) fairly applies. In the leading case of *Kearney v. London, etc., Railway Co.*, L. R. 5 Q. B. 411, affirmed in the Exchequer Chamber, L. R. 6 Q. B. 759, and cited approvingly in *Howser's Case*, 80 Md. 148, 30 Atl. 906, 27 L. R. A. 154, 45 Am. St. Rep. 332, Cockburn, C. J., said: 'Where it is the duty of persons to do their best to keep premises or a structure in a proper condition, and we find it out of condition, and an accident happens therefrom, it is incumbent upon them to show that they used that reasonable care and diligence which they were bound to use, and the absence of which, it seems to me, may fairly be presumed from the fact that there was the defect from which the accident has arisen.' "

To the same effect is the holding of the Supreme Court of North Carolina in the case of *Haynes v. Gas Company, supra*:

"Negligence being a failure of duty, proof that a 'live wire' carrying a deadly current of electricity was hanging over and lying upon a sidewalk, and that it had been placed above the street by and was the property of the defendant corporation and was under the control of the servants of the latter, and that by contact with such wire a person, having a right to be on the street, was killed, constituted a complete *prima facie* case of negligence, and the burden was put upon the defendant to show that the wire was not down through any negligence of itself or its servants or agents."

The Supreme Court of the State of West Virginia, in the case of *Snyder v. Electrical Co., supra,* says:

"There must be reasonable evidence of negligence. But where a thing is shown to be under the management of the defendant or his servants, and the accident is such as, in the ordinary course of things, does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care."

It is a well-considered opinion, and Justice Brannon, speaking for the court, uses the following language:

"Suppose there is no evidence of negligence on the part of the defendant, does the mere fact that the wire fell create a *prima facie* presumption of negligence, sufficient, in the absence of something appearing in the case to repel that presumption, to support the action? This involves the rule or principle of *res ipsa loquitur*—the thing itself speaks. A wire charged with a deadly current of electricity falls from its proper place of elevation above the street to the surface of the street, and there, by contact with a man lawfully passing along the highway, kills him with its current. Are we to presume that its fall came from some negligence of the owner, unless the circumstances of the case or facts shown by him shall show that its fall is not attributable to his negligence, but from some defect which that reasonable care and prudence proper in the case of such deadly wire was unable to discover, or some accident beyond his control; in other words, from inevitable accident. I answer that the law raises a *prima facie* case of negligence."

The Supreme Court of Massachusetts, speaking on this point, says in the case of *Uggla v. Street Railway Co., supra*:

"If a piece of iron, forming part of the overhead apparatus of an electric street railway, breaks and falls upon a traveler on a highway, injuring him, in an action against the corporation for such injury, if no evidence is offered to explain the breaking, or to show that pains had been taken to make the apparatus safe, the jury will be warranted, from the happening of the accident itself, in finding negligence on the part of the corporation."

To the same effect is the declaration of the Appellate Court of the state of Illinois in the case of *Larson v. Central Ry. Co., supra,* which speaks as follows:

"The proof of an injury occurring as the proximate result of an act which under ordinary circumstances would not, if done with due care, have injured any one, is enough to make out a presumption of negligence. So when a company permitted a broken electric wire to hang loose in the streets, proof of an injury resulting makes out a *prima facie* case."

The case of *Ennis v. Gray, supra,* from the Supreme Court

of New York, is in point on the proposition raised.  This was a case where the plaintiff, who was a roofer by trade, and being at work on the cornice, came in contact with defendant's converter or transformer used to change a high-tension electrical current of 1,000 volts to a lower tension current, maintained and operated by the defendant.  No one observed the accident, and plaintiff was found with his clothes in flames lying upon the wire between the converter and the wall.  A demurrer was interposed to the evidence, which showed substantially the foregoing facts.  The court held that:

"Evidence that the primary wires of a converter used to change a high tension current to a low tension, placed by an electric light company on a house which it supplied with electric light, were improperly placed and improperly insulated, and exposed to contact by any one going near it, is sufficient to prove negligence on the part of the company so as to render it liable to a person who, while repairing roof for the owner of the house, was injured by coming in contact with the wires."

In the consideration of the case, Justice O'Brien speaks as follows:

"A further question is presented, considering the nature of the accident, whether, merely from its happening, a presumption of negligence did not arise.  As said in *Breen v. Railroad Co.,* 109 N. Y. 300, 16 N. E. 61, 4 Am. St. Rep. 450: 'There must be reasonable evidence of negligence, but when the thing causing the injury is shown to be under the control of a defendant, and the accident is such as in the ordinary course of business does not happen if reasonable care is used, it does, in the absence of explanation by the defendant, afford sufficient evidence that the accident arose from want of care on its part.'  And, as said in *Millie v. Railway Co.,* 5 Misc. Rep. 301, 25 N. Y. Supp. 753: 'Since every man is presumed to discharge his duty, it results that whoever asserts negligence in another must prove the fact, and must prove it by a preponderance of evidence.  But there are cases in which the maxim *"res ipsa loquitur"* applies; that is to say, in which the very occurrence itself imports negligence.  The specific question here is whether the occurrence in controversy carries with it an imputation of negligence against the defendant

with the effect of imposing upon the appellant the burden of re-pelling this *prima facie* presumption of negligence.' So here we might ask whether the happening of this accident does not carry with it an imputation of negligence; it being self-evident that, if the wires had been properly insulated, it would not have oc-cured, and it being equally clear that with the exercise of ordinary care defective insulation could be avoided."

Weighing the terms of instruction No. 3 by the rules enun-ciated in the foregoing authorities, and taking into consideration the instructions preceding it and the fact that it was offered to a jury, on a demurrer to plantiff's evidence, and the further fact that there was no evidence of any kind or character offered on the part of defendant, tending in any wise whatsoever to explain or to show that the injury happened notwithstanding any care ex-ercised on its part, and when in connection with this the court further instructed, as in No. 6, that defendant "must be required to exercise the utmost degree of care in the construction, main-tenance, and care of their wires and poles, and in keeping out of their guy wires dangerous currents of electricity," we hold that it was not error to give instruction No. 3, nor to refuse No. 1, offered by defendant. Certainly it was the duty of defendant to see that its "electric light lines and appliances were in a safe condition for those who might be brought in close proximity to them in traveling along public streets," and the degree of care and the burden borne by it in putting them in this safe condition is plainly set out in instruction No. 6, in which it is held that it must be "required to exercise the utmost degree of care," and this we hold is the proper measure of responsibility. It is bound to exercise the highest degree of diligence and is liable, as a corollary thereof, for the slightest degree of negligence.

In giving instruction No. 9, the court substantially covers the proposition urged by defendant in instruction No. 2, which was offered, and which was refused. In the ninth instruction, the jury were charged that plaintiff must establish "by a fair prepon-derance of the evidence, not only that she was injured, but also

that the defendant had charged the wire with which the plaintiff came in contact with a current of electricity." This precluded a finding against the defendant on evidence deficient of proof that defendant itself, and not some one else, was liable for the condition of the guy wire and iron rod attachment, and that portion of the instruction in which the jury were charged that, "if you find from the evidence that the wire with which the plaintiff came in contact was the property of the defendant, and then being used as a part of its electric light system, and that the same was then charged with a deadly current of electricity, the presumption would be that the same was charged by the defendant," is not erroneous under the authorities above cited, for as was said by Shearman & Redfield on the Law of Negligence, *supra*:

"When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care."

We find no error either in the balance of the instructions which are given, or in the refusal of those denied defendant, and having fully considered herein all the propositions raised by defendant in error, and no error being found in the record, the case is accordingly affirmed.

All the Justices concur.