## REGER v. HENRY.

No. 4673. Opinion Filed July 13, 1915.

(150 Pac. 722.)

1. PRINCIPAL AND AGENT—Fraud—Liability of Vendor—Representations of Secret Agent. Where an owner in a real estate transaction introduces a prospective buyer to a third person, who is apparently disinterested, when, as a matter of fact, he is the secret representative of the owner, and commends such third person to the purchaser as an honest, trustworthy, and reliable person, fully informed as to the value of the property about to be purchased, and the purchaser, who is inexperienced in business and wholly uninformed as to the value of the property, honestly and in good faith believes that such third person is a disinterested party, and•reposes trust, faith, and confidence in him, relies upon and believes the statements and representations of such third person as to the value of the property, its desirability, rental income, etc., and as a result thereof purchases said property and is damaged on account thereof, the owner is liable and his conduct constitutes actionable fraud.

2. FRAUD—Vendor and Purchaser—Remedies of Purchaser—Action on Purchase-Money Note—Defense—Waiver. Where such purchaser has been induced by fraud of the owner through such third person to make said purchase, she may pursue one of two remedies: rescind the contract and restore or offer to restore the consideration, or affirm the contract and sue for damages; and when she elects to pursue the latter, it is not incumbent upon her to initiate the action, but she may, when sued upon a note given in connection with such transaction, recover her damages for such fraud, and her failure to initiate an action on account of such fraud before she is sued upon said note, and the making of payment upon said note with the knowledge of the fraud, do

not ratify the same or waive her rights to recover damages for such fraud when sued upon said note.

(Syllabus by Dudley, C.)

*Error from Superior Court, Garfield County;*
*Dan B. Huett, Judge.*

Action by Pat McInteer against Barbara A. Henry. Judgment for defendant, and plaintiff brought error, and, dying, the action was revived in the name of J. L. Reger, as administrator of his estate. Affirmed.

*Parker & Simons,* for plaintiff in error.

*H. G. McKeever* and *W. T. Church,* for defendant in error.

Opinion by DUDLEY, C.    September 28, 1910, Pat McInteer, hereinafter referred to as the plaintiff, commenced this action in the superior court of Garfield county against Barbara A. Henry, defendant in error, hereinafter referred to as the defendant, to recover the amount due upon a promissory note of $1,302, executed by her on March 3, 1909, due and payable to the order of plaintiff one year thereafter, bearing interest at 9 per cent. from date, and to foreclose a real estate mortgage, given to secure the same, upon certain property in the city of Enid. The defendant filed an answer and cross-petition, admitting the execution and delivery of said note and mortgage, but claiming damages for more than the amount due thereon, for fraud practiced by the plaintiff upon her, in connection with the execution of said note and mortgage. The case was tried to the court and jury, resulting in a judgment in favor of the defendant for $1,615, less the amount due upon said note, from which the plaintiff appealed. After the appeal was perfected, plaintiff died, and the action has been revived in

the name of J. L. Reger, as the administrator of his estate. Plaintiff demurred to the evidence; the demurrer was overruled, and exception saved. Following this, he filed a motion for a directed verdict. This motion was overruled, and exceptions saved.

The only questions presented for review are: (a) The overruling of said demurrer; and (b) the motion for a directed verdict. If the action of the trial court is correct, the judgment should be affirmed; otherwise, reversed.

The effect of a demurrer to the evidence and a motion for a directed verdict is well established in this jurisdiction. A demurrer to the evidence admits every fact which the testimony and reasonable inferences therefrom reasonably tend to prove. *Midland Valley R. Co. v. Larson,* 41 Okla. 360, 138 Pac. 173; *Crow v. Crow,* 40 Okla. 455, 139 Pac. 122; *Shawnee Light & Power Co. v. Sears,* 21 Okla. 13, 95 Pac. 449.

There is a sharp conflict in the evidence, and, this being true, on a motion to direct a verdict, all the facts and inferences in conflict with the evidence, against which the action is to be taken, must be eliminated entirely from consideration and totally disregarded, leaving for consideration the evidence which is favorable to the party against whom the motion is made. *Solts v. Southwestern Cotton Oil Co.,* 28 Okla. 706, 115 Pac. 776; *Duncan Cotton Oil Co. v. Cox,* 41 Okla. 633, 139 Pac. 270.

Applying the foregoing rules, did the trial court commit error in overruling the demurrer to the evidence and the motion for a directed verdict? To determine this question, it will be necessary to consider the evidence. The facts, as disclosed by the evidence, taking the fore-

going rules as our guide, may be summarized as follows: On and prior to March 3, 1909, the plaintiff was engaged in the real estate business at Enid, and owned considerable residence property therein. J. W. Riley worked for him, had access to his office, and in fact stayed in his office a large portion of the time. His principal duties were to show property to prospective buyers and assist in the negotiations and final consummation of deals. On said date the defendant, a widow about 57 years old, lived, with her 18 year old son, in Enid, and owned a farm in Alfalfa county, on which there was a mortgage of $900. She had lived in Enid about one year prior to said date. She was in bad health, very feeble, and in fact confined to her bed at least one-half of the time; was extremely nervous, depressed, and worried over her business affairs; was uneducated; had but little or no business experience; and knew but little about business matters and business affairs. She was wholly unacquainted with the values of property in Enid. The interest on the mortgage and the taxes on her farm were due, and she was without means to pay them, and she desired to sell her farm, or exchange it for unincumbered residence property in Enid. With this in view, shortly prior to March 3, 1909, she called at the plaintiff's office (she had never met him before), and endeavored to employ him, as her agent, to sell her farm or exchange it for Enid residence property. He informed her that he did not charge commissions, but gave them to his customers, and that he would trade her some city property of his own for her farm. During this conversation, Riley came in the office, whereupon the plaintiff introduced him to the defendant, informing her that he was a retired business man, perfectly honest, reliable, and

trustworthy, and well informed as to values of Enid property, and commended him to her as one who would gladly assist her, look after her business, advise her as to the value of city property, and protect her interests in any deals she might make. During this conversation, the plaintiff and Riley spoke in favorable terms of each other, as to their honesty and integrity. The defendant described her farm, and stated that she thought she ought to have at least $3,000 for it, and in this connection stated to plaintiff and Riley that she could attend to small business affairs, but when it came to selling or exchanging her farm she was unable, on account of her condition and lack of business experience, to do so and protect her interests, and that she would necessarily have to rely upon their judgment and advice. Whereupon Riley informed her that he would gladly assist her and look after and protect her interests in any deals she might make. Riley took her home in the plaintiff's buggy, and on the way home again informed her of his knowledge of the values of Enid property, and tendered his services to her, informing her that he would protect her interests and do as much for her as he would for his mother. On the following morning, Riley took defendant, in plaintiff's buggy, and showed her various pieces of plaintiff's property, one of which, known as the Pine street property, she liked. They examined it in a casual way. He informed her it was worth $2,400; that it was rented for $12.50 a month; that the tenant was subletting one room for $7.50 a month; that the taxes for the preceding year were $11; that the house had a good foundation; and that the kitchen was plastered. These representations were untrue. The discrepancy, however, as to the rental value, was very small. The property, as a matter of fact, was

only worth $1,300, and the taxes for the preceding year were about $36. They then returned to plaintiff's office, where she advised them that she liked the Pine street property, and asked him to make her a proposition, which he said he would do after examining her farm. Riley was present during this conversation. Several days afterwards she again returned to his office, where she had another conversation with the plaintiff (he, in the meantime, having examined her farm), in which he said that her farm was not worth over $1,500, but that he would allow her $2200 for it. in the deal, claiming that his property was worth $2400, to which she replied that her farm was worth more than that—at least, that she had paid $3,000 for it. The deal was not closed at that time. She went home, Riley accompanying her, and on the way home she asked Riley to endeavor to get the plaintiff to allow her $3,000 for her farm, to which he replied that he would. She also said to him that she believed she would wait and confer with her daughter, who was teaching school, as to the value of the Enid property, to which Riley replied that that was not necessary, her daughter did not know anything about the property, and that if she waited she would miss a bargain; that he used to confer with his wife on matters of that kind, and he always made a mistake in doing so, and he urged her to close the deal at once, insisting that the city property was worth $2400, and that on account of its location and desirability, from an income point of view, she could not afford to miss the deal. That evening she walked by the Pine street property and looked at it from the street. She never consulted with her daughter, and in fact had no opportunity to do so. Shortly after this, and on March 3, 1909, she returned to plaintiff's office, where, on

the earnest solicitation and advice of Riley, she closed the deal, by which she deeded her farm to the plaintiff, in exchange for the residence property, and gave him a mortgage back on the residence property for $1,302. This amount represented the difference between the value of the two pieces of property, plus the mortgage of $900 and $202, the amount due for interest and taxes. Before the deal was closed, the plaintiff and Riley represented to her that she could have as much time on the note as she wanted, but when they drew the note, it was made payable in 12 months. She objected to signing the note, asking them to give her at least seven years, to which the plaintiff replied that he would make the note due in one year, and if she could not pay it when it became due he would extend it, and then Riley said:

"That is all right, go ahead and sign up the papers. If you cannot pay the note when it is due, he will extend it. His word is as good as his bond."

The farm was worth $3,000, and the city property $1,300. The defendant, in making the deal, relied solely upon Riley as to the value and desirability of the Enid property and the facts with reference to it, believing that he was really representing her, looking after and protecting her interests, when as a matter of fact he was the secret agent of the plaintiff, looking after and protecting his interests, and not hers. As a result of the confidence which she reposed in Riley, she was defrauded. In other words, Riley was the decoy of the plaintiff in this transaction: the defendant swallowed the whole bait, and was injured as a result. After the deal was closed, she moved into the property, and in a short while learned that she had been defrauded. In April and May, after the maturity of the note in March, 1910, she made four

payments on it, aggregating $99. She made these payments with full knowledge of the fraud, and made no objections. The day before this suit was brought, she offered to pay $376 if he would apply it as a credit upon the note. This he declined to do, but offered to take it if she would give him a new note and mortgage. Her attorney was with her on this occasion, and on his advice she declined to do it, and on the following day this suit was brought. When she made these payments, she thought she had to, in order to protect her property from foreclosure. She did not intend, as a matter of fact, to waive the fraud that had been practiced upon her.

The foregoing facts are fairly deducible from the evidence. This being true, did the trial court commit error in overruling the demurrer to the evidence and the motion for a directed verdict? We do not think so.

Plaintiff insists that the property was his: that this fact was known to the defendant, that she examined and inspected the property before the deal was closed, and that he had a right to magnify and exalt the value of his own property, and that in doing so he merely expressed an opinion as to value, on which she should not rely and for which he is not liable. As a general rule, an owner, in selling or exchanging his own property, may exalt its value, and where the buyer examines the property before the deal is closed, he has no right to rely upon the representations of the owner as to value, and if he does so he must take the consequences. *Long v. Kendall,* 17 Okla. 70, 87 Pac. 670; *Hazlett et al. v. Wilkin,* 42 Okla. 20, 140 Pac. 410. The facts, as disclosed by the evidence, do not bring this case within this rule of law, but do bring it within the well-recognized exception to the rule, which is: Where an owner introduces to the prospective

buyer a third person, who is apparently disinterested, when as a matter of fact he represents the owner, and commends such third person to the purchaser as an honest, trustworthy, and reliable person, fully informed as to the value of the property about to be purchased, and the purchaser; who is inexperienced in business and not informed as to the value of the property, believes that such third person is a disinterested party, and reposes trust, faith, and confidence in him, and takes his judgment for the value of the property, its desirability, etc., and relies upon it to his damage, the owner is liable. In Smith on the Law of Frauds, section 33, in discussing this exception to the general rule, it is said:

"If representations are made by a third person, who is in conspiracy with the vendor, as to the value of an article sold, an actionable fraud is committed. In such case the fraud grows out of the artifice of the seller in procuring the representation to be made by an apparently disinterested person, thereby disarming the purchaser of the ordinary element of distrust between parties dealing with each other direct" (citing *Kenner v. Harding*, 85 Ill. 264, 28 Am. Rep. 615; *Manning v. Albee* [Mass.], 11 Allen, 520; *Adams v. Soule*, 33 Vt. 538).

And again, in section 38, it is said:

" * * * But the rule does not apply where the statements come from another party unknown to have any interest in magnifying the value of the land. Hence, when the third party was in conspiracy with the owner, the representation by him is fraudulent. In such case the person to whom the representation is made is thrown off his guard by the statement coming from an apparently disinterested person. The reason for the rule that statements of third parties concerning value are to be relied on is in the fact that such person has apparently no object to gain by misrepresentation, and stands in the position of a disinterested person, in the light of a friend

who has no motive or intention to depart from the truth" (citing *Medbury v. Watson,* 6 Metc. [Mass.] 246, 39 Am. Dec. 726).

In the case of *Kenner v. Harding,* supra, it is said:

"The general rule that the mere statements of the vendor as to the value of land, or what he has been offered for it by others, are not, of themselves, evidence of legal fraud to justify a recovery against him by the purchaser has no application, where the purchase is induced by the false representations to the same effect by a third person, effected by a conspiracy between him and the vendor."

See, also, 14 Amer. & Eng. Ency. of Law, subd. 14, p. 124.

The facts bring this case within the foregoing exception to the general rule. The plaintiff introduced the defendant to Riley, and commended him to her as an honest, trustworthy, and reliable person, stating to her that he was a retired business man, fully acquainted with the values of Enid property. Riley tendered his services and undertook to advise her, to look after and protect her interes.s. The defendant had a right to assume, and in fact did assume, that Riley was a disinterested person, wholly disconnected with plaintiff's business. She confidently believed that Riley was her friend; she believed and relied on all he said, followed his advice, and took his judgment in lieu of hers. As a matter of fact, however, he was the secret agent of the plaintiff and was working for his interests. In addition to this, she wanted to see her daughter and advise with her as to the value of this property. Riley used his influence, overpersuaded her, and caused her to abandon that idea. Certainly the conduct of the plaintiff, as disclosed by the record, is actionable fraud.

It is next contended by the plaintiff that the defendant, in making the payments upon the note after it matured and in tendering the large payment the day before the suit was brought, with full knowledge of the fraud, ratified the contract and waived her rights. With this contention we cannot agree. She could pursue one of two remedies: rescind the contract, and restore, or offer to restore, the consideration, or affirm the contract and sue for damages. *Wesley v. Diamond,* 26 Okla. 170, 109 Pac. 524. She, in effect, pursued the latter course. Her cause of action would not bar until the expiration of two years from the time she discovered the fraud, and she filed her cross-petition within this period. Subdivision 3, section 4657, Rev. Laws 1910. It was not incumbent upon her to initiate the action for fraud, but she had a perfect right to plead it as a defense upon the note. 14 Amer. & Eng. Ency. of Law (2d Ed.) p. 169, subd. 6, and cases cited.

Under the facts as disclosed by the evidence the defendant, by her delay and failure to initiate an action for relief, did not place the plaintiff to any disadvantage, and her acts and conduct in making the payments on the note after its maturity with knowledge of fraud did not, as a matter of law, operate as a waiver of the fraud. If, however, she intended, as a matter of fact, to waive the fraud by her acts and conduct, the rule would be different, but this was a question of fact for the jury. *Huntington v. Lombard et al.,* 22 Wash. 202, 60 Pac. 414; *Murray v. Davies,* 77 Kan. 767, 94 Pac. 283; *Beland et al. v. Anheuser-Busch Brewing Association,* 157 Mo. 593, 58 S. W. 1; *Merrill v. Taylor,* 72 Tex. 293, 10 S. W. 532; *Morman* v. *Harrington,* 118 Mich. 623, 77 N. W. 242; *California Southern Hotel Co. v. Callender,* 94 Cal. 120,

48—25

29 Pac. 859, 28 Am. St. Rep. 99; *Mallory v. Leach,* 35 Vt. 156, 82 Am. Dec. 625; *Matlock v. Reppy,* 47 Ark. 148, 14 S. W. 546; *Haven et al. v. Neal et al.,* 43 Minn. 315, 45 N. W. 612; 14 Amer. & Eng. Ency. of Law (2d Ed.) 170.

We therefore conclude that the trial court did not err in overruling the demurrer to the evidence and the motion for an instructed verdict, and the judgment of the trial court should, therefore, be affirmed.

By the Court: It is so ordered.