## CLIFT et al. v. HART.

No. 7739—Opinion Filed Oct. 10, 1916.

Rehearing Denied Nov. 14, 1916.

(160 Pac. 912.)

**Fraud — Elements — Representations — Expression of Opinion.**

An assignee of a leasehold interest in land cannot predicate fraud upon the representations of his assignor which, either by reason of their form or subject-matter, constitute mere expressions of opinion. The assignee is not justified in relying upon the accuracy of such statements, especially where he personally views the premises and makes independent inquiry relative thereto; and if he does so, and the opinion so expressed proves incorrect, he must suffer the consequences

(Syllabus by Bleakmore, C.)

Error from District Court, Canadian County; John W. Hayson, Judge.

Action by George W. Hart against H. S. Clift and another. Judgment for plaintiff, and defendants bring error. Affirmed.

R. B. Forrest, for plaintiffs in error.

W. M. Wallace, for defendant in error.

Opinion by BLEAKMORE, C. This action was commenced in the district court of Canadian county by George W. Hunt, plaintiff, against H. S. Clift and L. B. Clift, defendants, to recover on a promissory note in the sum of $600.

Defendants answered:

"First. These defendants admit the execution and delivery of the said promissory note sued on herein.

"Second. Further answering, these defendants allege that said note was obtained by the plaintiff through means of fraud and misrepresentations, in this, to wit: The said plaintiff, being then and there the owner, or alleged owner, of a certain leasehold on a certain tract of land lying and being situate in the county of Lane, in the state of Oregon, and being then and there desirous of disposing of said leasehold to the defendant H. S. Clift, did then and there represent and state to the said H. S. Clift that he was well acquainted with the said land contained in said leasehold, and knew the productive quality thereof; that he had farmed and used the same and had realized large profits in gathering and disposing of the products therefrom; and defendants say that said leasehold was particularly adapted to fruit growing, and had located thereon a large number of bearing fruit trees, of which, and concerning which, the defendant H. S. Clift had no knowledge, and then and there informed the plaintiff that he was wholly in ignorance of the business of fruit growing, and had no experience whatever as to productiveness and incomes from such business, and stated to the plaintiff that he was willing to enter into said undertaking if he could be confident that ample remuneration would probably follow his efforts in that line; that the plaintiff thereupon stated and represented to the said defendant that said tract of land included in said leasehold had, when he was in possession of the same, profits from fruit grown and picked therefrom, $900 a year, for the two last preceding years; that the apple trees on said land were very productive, and would produce large and easy profits to the said defendant, if he would take an assignment of plaintiff's said leasehold thereon; and defendant says he believed the said statements and representations of the plaintiff, and in all particulars relied thereupon as the truth, and by reason of such reliance and belief he was induced to and did enter into a contract with the plaintiff for the purchase of said leasehold of said land.

"Third. Defendants further say that the said representations of the plaintiff of and

concerning the productive quality of said fruit trees on said land, and his having realized large profits therefrom, or any profits whatever, were false and known by the plaintiff to be false when he made the same; that said apple trees were not productive, but on the contrary were poor bearing trees, producing scarcely sufficient fruit to pay the expense of picking—all of which the plaintiff well knew when his aforesaid representations were made to the defendant.

"Fourth. Defendants further state that the said promissory note sued on in this case was given to the plaintiff by the defendant H. S. Clift, and so soon as the defendant discovered said fraudulent representations of the plaintiff, he repudiated the same on the grounds of said fraud."

Demurrer was sustained to the evidence, and judgment rendered for plaintiff, from which judgment defendants have appealed.

The sole contention here is that the trial court erred in sustaining the demurrer, for the reason that there was some evidence tending to establish the allegations of fraud contained in the answer.

Defendants purchased from plaintiff the assignment of a four year lease of certain lands in Oregon, a portion of which was planted to orchard, together with certain live stock, for the sum of $900, the note in suit evidencing part of the purchase price. They took possession of the premises and occupied the same for a year, realizing a net profit therefrom of but $6. They discovered that the trees were diseased, and the yield was small, the fruit of inferior quality, and the venture proved unprofitable. However, there was no evidence that the trees were diseased or known to be defective by the plaintiff at the time the contract was entered into. At the expiration of the year defendants sold the lease for $250, and a portion of the live stock for the additional sum of $40, retaining the remainder, which was apparently of little value. There was no evidence offered to establish the falsity of the representation that plaintiff had realized an annual profit of $900 from the leasehold during the years of his possession previous to the sale to defendants.

The defendant H. S. Clift testified:

"Q. You had been negotiating for this lease, this farm, for quite a while? A. Yes, sir. Q. And you was all over it two or three times, well, several times, were you not? A. I looked it over; yes, sir. Q. You looked it over two or three times? A. Yes, sir. Q. And you talked with the neighboring people there about it? A. I did not talk to very many. I have talked to a few; yes sir."

Defendant L. B. Clift also testified:

"Q. Now, you may state to the jury what was said by Hart in relation to the productiveness, the quality of the orchard that was on that land, covered by that lease?

"By Mr. Wallace: Objected to for the reason that it was incompetent, irrelevant, and immaterial.

"By the Court: Overruled and exceptions allowed plaintiff.

"A. Well, he represented it to be a good bearing orchard to me and all of us. Q. Just state to the jury what he said? A. He said we could pay for the land with that orchard, the crop in about one year, and have the other three years, have that what we made on it during the other three years. Q. How? A. The other three years we would make money on it. Q. Did he tell your father anything about the quality of the trees? A. He said that they were good trees, and that he had a very good crop. Q. He said what? A. Said they were good trees and would make a good crop. Q. Did he say anything about the fruit produced, as to it being marketable? A. Yes. Q. What? A. He said— Q. Did he make any representations as to what you would get to make out of it? A. Yes, he said it would make money; that he had made money. Q. Just tell what he said to you. Did he say anything about the amount of money? A. He said the amount, but I do not know exactly what he did say, something like $600 or $900 a year. Q. State whether or not—state what he said to you in reference to the improvements as to the amount. A. Yes, sir. Q. Well, what was it? A. He said he thought I had a good thing. Q. Did you believe him? A. Yes, sir. Q. I will ask you whether or not it is a fact that you believed him, and if your believing him had anything to do with your buying this place? A. Yes, sir. * * * Q. You bought this land with your eyes open? A. I guess we did. Q. You looked at it? A. Looked it over. Q. You looked around? A. Yes, sir. Q. And you knew exactly what you was getting in the land? A. I thought I did. Q. You knew that you had 125 acres of land? A. No, 123. Q. And that it had a cherry orchard of about 8 acres? A. Yes, sir. Q. Was that bearing? A. Yes, sir. Q. And you saw that? A. Yes, sir. Q. And this apple orchard of about 8 acres? A. Something like 8 or 10. Q. And it had been bearing some time? A. Yes, sir. Q. And you knew that you was buying these cattle, hogs, horses, and pasture and the improvements? A. Yes, sir. Q. And you knew what you was getting? A. Yes, sir. Q. And you believed that you had made a good deal? A. Yes, sir. Q. You had been talking to Mr. Hart about buying this for some time? A. It had been mentioned; yes, sir. Q. And he had asked you more money for it than you paid? A. I do not remember. Q. And you frequently saw this property and talked with him about it? A I do not know as I did."

From the evidence it would seem that the condition of the fruit trees was in no manner concealed, but that the means of knowledge relative thereto was equally available to the parties. Defendant viewed premises at least two or three times and made independent investigation by inquiries of neighbors regarding the same before their purchase.

"As a general rule, an owner, in selling or exchanging his own property, may exalt its value, and where the buyer examines the property before the deal is closed, he has no right to rely upon the representations of the owner as to value, and if he does so he must take the consequences." Reger v. Henry, 48 Okla. 759, 150 Pac. 722; Long v. Kendall, 17 Okla. 70, 87 Pac. 670.

Clearly the alleged representations of plaintiff as to the quantity, quality and value of the future yield of the fruit trees was a mere expression of opinion.

"A purchaser of land cannot predicate fraud upon statements made by the vendor which, either by reason of their form or subject-matter, show to be mere expressions of opinion. A purchaser is not justified in relying upon the accuracy of such statements, and, if he does, and the opinion turns out wrong, the purchaser has no action because thereof." Hazlett v. Wilkin, 42 Okla. 20, 140 Pac. 410.

In Wesley v. Diamond, 26 Okla. 170, 109 Pac. 524, this court quotes with approval the doctrine announced in Herrin v. Libbey, 36 Me. 350, as follows:

"The rights of a party who has been defrauded in making a contract, are, on the discovery of the fraud, within a reasonable time to rescind the contract, and restore the parties to their former condition, or to affirm the contract, and claim compensation in damages for the injury he has sustained by reason of the fraud."

In the instant case, if it could be conceded that there was evidence of actionable fraud on the part of plaintiff inducing the contract, it is clear that after the discovery of such fraud defendants declined to rescind, and elected to affirm. In their brief they state, "Here the defendant is not relying upon a rescission of the contract." It cannot be claimed that there was an entire failure of consideration; and defendants do not attempt to recoup damages on account of a partial failure thereof. They neither allege nor offer proof of the measure of damages.

The demurrer was properly sustained, and the judgment should be affirmed.

By the Court: It is so ordered.