**C. H. GREENE and Roy Young,**
**Plaintiffs in Error,**

v.

**Joe B. HUMPHREY, Defendant in Error.**

**No. 36271.**

Supreme Court of Oklahoma.

Sept. 28, 1954.

Erman S. Price, Oklahoma City, for plaintiffs in error.

Schwoerke & Schwoerke, C. W. Schwoerke, Oklahoma City, for defendant in error.

BLACKBIRD, Justice.

On May 5th, 1952, Joe B. Humphrey, defendant in error, purchased a barber shop on South Agnew Street, Oklahoma City, operated by W. H. or "Bill" Greene, for the sum of $1,200, evidenced by a bill of sale for the fixtures and contents of the shop, signed and delivered to him by plaintiff in error, C. H. Greene, Bill Greene's brother, in whose name the shop had originally been purchased. The shop was located in a small building owned by plaintiff in error, Roy Young, and situated on a lot owned by South Oklahoma Town Company. After purchasing the shop, Humphrey went into immediate possession and operation of it and thereafter, on May 8th or 9th he was served with a thirty-day notice to vacate by South Oklahoma Town Company, to facilitate clearance of the building from this lot. Humphrey then went to the Greenes and, according to his testimony, attempted to rescind the sale and obtain his money back, but they refused to return it to him. A few months later when the building was razed and removed from the lot, Humphrey sold the barber shop furnishings and equipment for $100. He thereafter commenced this action, as plaintiff, for $1,200 in damages against plaintiffs in error, as defendants, on the ground that they had fraudulently misrepresented to him that he was to have a one-year lease on the premises. Defendants denied that they had been guilty of any fraudulent misrepresentation in the sale of the shop and at the trial it was established that before said sale was consummated, plaintiff was apprised of the fact that the defendant Young owned only the building and that the lot was owned by a company that was a stranger to the transaction. Nevertheless, plaintiff obtained a verdict and judgment for $1,100 and defendants have lodged this appeal. Our reference to the parties by their names or trial court designations, will be continued.

In seeking reversal, defendants cite testimony tending to show that before plaintiff purchased the barber shop, he was apprised of the fact that the building which housed it was being rented from the defendant Young, on a "month to month" basis, and undisputed evidence that plaintiff was told that Young did not own the lot, but that it was owned by Armour & Company. They contend that in such situation the rule of caveat emptor applies and it was the duty of plaintiff to ascertain from his own independent investigation the kind of tenancy under which the shop was occupying the lot. They say in view of this that any statement made to plaintiff by them and/or Bill Greene as to the likelihood of his being able to continue operation of the shop at that location for a year or more were "mere expressions of opinion" under the principles applied in Clift v. Hart, 61 Okl. 233, 160 P. 912. There is no question under the evidence that the defendant Roy Young, owner of the building, knew that South Oklahoma Town Company owned the lot on which the said building was located. There is no question but that he knew that according to the lease from said company, it had the right to have the lot vacated on thirty days' notice. Plaintiff's testimony reasonably tends to show that when, during the negotiations preceding the sale, he went to see Young to apprise him of his proposed purchase of the shop and to ascertain if it would be satisfactory with him (Young) if he assumed possession of the building in place of Bill Greene, he told Young that he didn't want to make the purchase unless he could get a year's lease on the premises and that Young, instead of informing him of such provision in the lot lease, assured him that he could have the one-year lease he desired and asked him to come and see him the next day to get it. It does not clearly appear that the defendant C. H. Greene was so well acquainted with the lease on the lot, but plaintiff's testimony, corroborated by Greene to the extent of showing that the matter of tenancy was discussed in his presence, reasonably tends to show that Greene, with knowledge, or in reckless disregard, of the true facts of the matter,

aided and abetted his brother Bill, and Young in leading plaintiff to believe that Bill was operating under a one-year lease on the premises and that plaintiff could obtain the same kind of a lease. According to plaintiff, the defendant, C. H. Greene, told him: " * * * I am sure you can get the lease. *I've got a year on it myself.*" (Emphasis added.) Certainly plaintiff knew that the rent on the barber shop premises was being paid by the month, or on a "month to month" basis, but according to his testimony he was given definite assurance that as long as he paid the rent in that manner, he could occupy the premises for at least a year. We think it is plain from defendants' representations as a whole, that they were calculated to leave that impression. But, as hereinbefore indicated, the evidence eventually revealed that the rental arrangement to which defendants referred, when talking to plaintiff, as a "one year" lease, was not such a lease at all in the commonly accepted meaning of that term since it could give no assurance of a tenancy for that period, with the lot owner having the right, as it did, to terminate it by taking possession of the lot upon thirty days' notice at any time it pleased. There can be no question that under such evidence defendants' statements constituted misrepresentations of fact rather than mere expressions of opinion and that under the circumstances, plaintiff had a right to rely on such representations without conducting an investigation as to their truth or falsity. See Nickle v. Reeder, 66 Okl. 10, 166 P. 895. One who relies upon material representations that are false is not precluded from recovering damages because of the fact that he had an opportunity to investigate them and did not do so. Thompson v. Davis, 124 Okl. 79, 254 P. 501; Werline v. Aldred, 57 Okl. 391, 157 P. 305, 158 P. 893. Defendants' plea that plaintiff might have determined the true facts concerning the tenure of the lot does not accord with the principles of justice. In Stevens v. Reilly, 56 Okl. 455, 156 P. 157, this court held:

"When it appears that one has been guilty of intentional and deliberate false statements, by which to his

knowledge another has been misled and influenced in his action, he cannot escape the legal consequences of his fraudulent conduct by saying that the fraud might have been discovered had the party whom he deceived exercised ordinary care and diligence."

Defendants also contend that there is no evidence to show that plaintiff offered to rescind the barber shop purchase contract or restore what he had bought thereby, citing a quotation in Clift v. Hart, supra, from Wesley v. Diamond, 26 Okl. 170, 109 P. 524, to the effect that a party who has been defrauded in making a contract must, upon discovery of the fraud and within a reasonable time, offer to rescind the contract and restore the parties to their former condition, in order to claim compensation in damages for the injury he has sustained by reason of the fraud. As hereinbefore noted, the evidence in the present case was that when plaintiff received from the lot owner the notice to vacate same he demanded his money back, and we think the evidence, together with the reasonable inferences that the jury could draw therefrom, tends to show that he offered to rescind the contract. It can be reasonably assumed that when plaintiff called upon the Greenes to return his money, he let them know, or it was understood, that if they would do so he would be glad to turn the shop back to them. After a careful examination of the entire record we have found competent testimony reasonably tending to support them on all issues as to which defendants contend the verdict and judgment are contrary to the evidence. In this connection see Thompson v. Davis, supra.

Defendants' last contention is that the trial court erred in allowing counsel for plaintiff, in cross examining the defendants and their witness, Bill Greene, to question them concerning their previous arrests and convictions. After the defendant, Roy Young, had prematurely, and before his counsel had finished making an objection, answered in the negative, plaintiff's counsel's question as to whether he had ever been arrested for "bootlegging", said counsel elicited from him the fact that he had been convicted, on his own plea of "guilty" (along with the tenants in one of his properties) of "bootlegging". Plaintiff's counsel also elicited from the witness, Bill Greene, that he had previously been convicted of second degree burglary. Defense counsel cites cases for the proposition that proof that defendant has committed one crime is not admissible for the purpose of showing he has committed another, unless there is "some legal connection" between the two, and that evidence of the *commission* of, or *arrest* for, previous crimes is not admissible for the purpose of impeaching a witness. He seems to also contend for the rule in criminal cases that evidence of the defendant's general reputation is not admissible unless he has himself put his reputation at issue. Counsel's argument and the authorities he cites are not applicable in the situation here. In this connection see Worley v. State, 32 Okl.Cr. 1, 239 P. 683; 58 Am. Jur., "Witnesses", sec. 686. In accord with 12 O.S.1951 § 381, this Court has consistently held that a witness' former convictions "may be shown for the purpose of affecting his credibility", though mere arrests may not be shown for that purpose. After carefully examining that portion of the record of the trial in which the allegedly prejudicial questions were asked of these witnesses, we have concluded that no prejudicial error was committed in this respect.

The judgment of the trial court is affirmed.

HALLEY, C. J., and JOHNSON, V. C. J., and WELCH, CORN, DAVISON, ARNOLD and WILLIAMS, JJ., concur.